John P. BALLENTINE *v.* Harrell BALLENTINE and BALLENTINE PRODUCE, INC.

81-212                                    628 S.W. 2d 327

Supreme Court of Arkansas
Opinion delivered March 1, 1982

*William M. Stocks,* for appellant.

*Carl K. Creekmore,* for appellees.

FRANK HOLT, Justice. Appellant brought this action to recover damages based upon an asserted fraudulent representation by appellees in violation of state and federal securities acts. The Securities and Exchange Act of 1934 applies to "the offer or sale of any security." 17 C.F.R. § 240.10b-5 (1981). 15 U.S.C. § 77 q. The Arkansas Securities Act applies to "the offer, sale or purchase of any security." Ark. Stat. Ann. §§ 67-1235 and 67-1256 (Repl. 1980). The appellant contends that the chancellor erred in finding that these state and federal securities laws were inapplicable to the facts of this case and that as a result of that erroneous finding the court further erred in holding that the appellant failed to sustain his burden of proof in establishing fraud or damages.

The appellant filed suit against the appellees, his older brother, Harrell Ballentine, and Ballentine Produce, Inc., which is principally owned by Harrell, in September, 1979, alleging Harrell made fraudulent misrepresentations prior to 1970 and continued them through 1974 concerning an oral employment agreement whereby appellant was to receive 49% of the stock in a proposed "spin-off" corporation of Ballentine Produce for appellant's past and future services. The spin-off corporation would be established to handle the transportation aspects of Ballentine Produce. Based upon the offer to sell or issue stock in exchange for services rendered or to be rendered, appellant alleges he suffered substantial damages. Further, the corporation also was liable for the alleged fraudulent and misleading offer to transfer the stock, all of which was in violation of federal and state securities laws. He sought damages in excess of $200,000 and in the alternative specific performance of the oral agreement to issue stock to him in exchange for his past and future services.

The appellant had worked in the trucking operation of Ballentine Produce since 1954. In 1970 he was supervisor of transportation operations and received a salary of $12,000 per year. In May or June of 1970, he left his employment following a dispute with Harrell. A few days later, at the request of another brother, Ralph, a meeting was arranged at a local bank where Ralph was an official to discuss the

differences between the two brothers. Attending the meeting were the three brothers, an attorney friend of the family and a long time accountant for the appellee produce company. The appellant testified that he had a salary offer of $30,000 annually plus expenses from another organization. At the meeting Harrell agreed to meet his terms for an increase in salary to $15,000 annually and there would be a spin-off of the corporation with John receiving 49% of the new corporation. It would be formed within a reasonable time. This understanding had previously been discussed and agreed upon. He had not mentioned the subject to appellee Harrell nor made any demands on him since he left his employment in 1974 until he filed this lawsuit in 1979.

The attorney testified that he understood the subject of the meeting was John's reemployment, an increase in salary, and ratifying a previous agreement between them about appellant's participation in the division of some company stock. However, he could not recall the specifics of the agreement. He recalled it was to be performed within a reasonable time.

Ralph testified that he called the meeting to resolve the differences between his two brothers, i.e., John's reemployment and to draw up the necessary documents and legal papers about John owning a part of the business. The subject of a spin-off was discussed and Harrell instructed the accountant to accomplish the necessary paper work. The accountant never did comply. He further testified that when John severed his employment again in 1974 that Harrell urged him to persuade John to return to work and, should he sell his business within a few years, he would give John three or four hundred thousand dollars. Ralph acknowledged that he and Harrell had been at odds since their father's death in January, 1976, and Harrell had harassed, humiliated and embarrassed him at great lengths. On one occasion when he was out of town, Harrell had resigned from the board of Ralph's bank and become a board member of a rival bank which resulted in considerable publicity in the local paper.

The accountant for the appellee corporation testified that he had served in that capacity since 1954 until his

retirement in 1976. He had incorporated the produce business. He had no definite recollection of the meeting since it had occurred approximately ten years ago. He had discussed the feasibility of a spin-off for tax purposes with Harrell, and it was decided that it was too expensive and, therefore, never materialized.

Harrell testified that he had incorporated his business in 1954. John had worked for him since then and would walk off the job about four times a year. He would continue paying John and Ralph would relay to appellant that if he wanted his job he could come back to work. He recalled the May or June 1970 meeting at the local bank where he was a vice president and on the board. Ralph initiated the meeting in order to get John back to work. Ralph said he would have to keep him up if he, Harrell, didn't. The meeting resulted. At the meeting he agreed to raise John's salary from $12,000 to $15,000 a year plus a new car, expenses and a country club membership. John drew this salary plus the extras until he quit in 1974. He and John drew the same salary including the same Christmas bonus. He denied that he ever promised appellant any percentage of the business or made any statement that he would share with him any proceeds should he sell it. The first he even knew about the alleged promise or representation to give him 49% of the new corporation in a spin-off arrangement was when appellant filed this action about five years after he had voluntarily left his employment. He had considered a spin-off for tax purposes but determined it was too expensive and, therefore, not feasible. At appellant's request he permitted him to purchase trucks and lease them to the corporation. Appellant voluntarily left his job threatening to "break you" when a dispute arose concerning dispatching of the leased trucks. Before bringing this law suit, the appellant had been unsuccessful in two business ventures. He had assisted John since he was 14 years old, including high school and college. He is spoiled and when Ralph would call about putting him back to work, he would always do so. Two other brothers had worked for him and each, with his assistance, has a successful business in other states.

The findings of the chancellor as to a fact question will

not be disturbed on appellate review unless clearly erroneous (clearly against the preponderance of the evidence) and due regard shall be given the trial court to judge the credibility of the witnesses. Rule 52, ARCP, Ark. Stat. Ann. Vol. 3A (Repl. 1979). *Ratliff* v. *Thompson*, 267 Ark. 349, 590 S.W. 2d 291 (1979). Here, when we give due regard to the chancellor's superior position to observe the witnesses and resolve the conflict in their testimony, we cannot say that his findings are clearly erroneous.

Affirmed.