## C & C ELECTRIC CONSTRUCTION COMPANY, INC. and SPAULDING ATHLETIC GOODS COMPANY, INC. *v.* Lee Otis ROGERS

83-253                                                    663 S.W.2d 707

Supreme Court of Arkansas
Opinion delivered January 9, 1984
[Opinion Amended on Denial of
Rehearing February 21, 1984*.]

*HOLLINGSWORTH, J., not participating.

*Davidson, Horne, Hollingsworth, Arnold & Grobmyer, A Professional Association,* for appellants.

*Hoover, Jacobs & Storey,* for appellee.

JOHN I. PURTLE, Justice. Appellant purchased appellee's stock in Spaulding Athletic Goods Company, Inc. and Spaulding Investment Company, Inc. As part of the sale agreement appellant entered into a non competition contract. Subsequently appellant brought suit in chancery court for rescission and damages on grounds that appellee had made material misrepresentations and omitted or concealed

material facts and breached certain warranties in the purchase agreement. The chancellor found in favor of appellee on all allegations and dismissed the complaint with prejudice.

On appeal appellants argue that the chancellor erred in finding that appellee made full and adequate disclosure of all material facts as required by law and that appellants were not entitled to rescission. We think the chancellor was correct on both arguments and therefore affirm the decree.

Sometime in June of 1980 Russell Clark, majority stockholder of C & C Electric Construction Company, Inc., entered into negotiations with Lee Otis Rogers, President and holder of one third of the stock in Spaulding Athletic Goods Co., Inc. and Spaulding Investment Co., Inc., for the purchase of Rogers' stock in the companies. During negotiations Rogers allowed Clark to have access to several previous annual financial reports of the companies and to monthly financial reports of the year 1980 and to minutes of the board meetings and other related material. Clark inspected the records of the companies, including accounts payable and receivable. He also talked to the in-house bookkeeper and the accountant. Clark inspected the year-to-date bookkeeping records which showed a year-to-date profit of some $37,000. A note attached indicated that bonuses, deferred commissions and taxes were not accumulated and carried in the financial statement.

The sale of the stock was completed on July 14, 1980. A non competition agreement was entered into at the time of closing. The purchase price of the stock was $250,000.

During 1980 it developed that Spaulding owed $35,000 to salesmen as commissions at the time the same was completed and about $70,000 in deferred salaries by the end of the year. The business was not doing well and Clark contacted Rogers several times in an effort to rescind the contract. Although he tendered the stock, Rogers refused to rescind. Clark then filed suit for rescission and damages.

Following the closing Rogers immediately commenced working for his son who was also in the sporting goods business. It was their activity which gave rise to the count in

the complaint for damages for breach of the non competition agreement.

We first address the issue of whether appellee failed to make adequate and full disclosure of all material facts relating to the Spaulding stock. The most likely failure to disclose involves the matter of delayed compensation and bonuses for employees. Appellants argue that appellee failed to disclose the amount of commissions which were earned but not specifically mentioned in the financial statement of Spaulding. The same argument is made relating to about $70,000 in deferred salaries. A note to the financial statement for calendar year 1980 up to the time of negotiations and sale pointed out that the statements did not reflect accrued bonuses and federal and state taxes. Clark and Rogers discussed bonuses and commissions several times. Rogers claims he never represented anything about the bonuses. This being a disputed fact question the chancellor was free to believe either party. As to the accrued salaries or commissions the record of sales was kept in a ledger which Clark inspected. It would have required some work but accrued commissions for the year to date could have been determined from available information.

The first quarterly report for 1980 revealed total compensation paid to date was $55,840. The 1978 and 1979 reports, which were in Clark's hands, stated yearly compensation payments of $403,939 and $399,755. By common sense analysis and projection of the partial report for 1980 it is readily seen that total compensation for 1980 would be about $244,000 unless compensation was paid mostly in the last half of a calendar year. It is also argued that, among other things, the appellee executed a stock purchase agreement in which he warranted that there were no liabilities not fully reflected or reserved against the books of Spaulding. Therefore, appellants argue that the earned but unpaid commissions and bonuses were liabilities not reflected in the purchase agreement. The appellants were furnished with all financial statements on Spaulding's operation from the time of the sale backward for several years. Clark discussed the matter with Spaulding's in-house bookkeeper on several occasions. At no point is it argued that Rogers made false or fraudulent statements. Rather it is argued that he failed to

properly inform the purchaser of all material facts relating to the stock at issue and the financial status of Spaulding. In examining the voluminous abstract and brief we are unable to find undisputed evidence that appellee failed to make adequate disclosure of all material facts involving this transaction. We think appellants either had in their hands or had access to every material fact at issue in this proceeding.

We cannot say with certainty that the bonuses which were paid at the end of the year were vested. Even if such evidence were in the record there is substantial evidence to the contrary. The amount of the bonuses could not be determined until the end of the year at which time Spaulding determined the amount of its profit for the year. A portion of the annual profits was then distributed as bonuses. We stated earlier that previous year end financial reports revealed that bonuses were paid at the end of the year. Thus, it was apparent that Spaulding had paid bonuses in prior years. In any event this was a disputed issue and facts were before the court which would support a decision either way.

The standard of review in chancery cases is that of clear error. *Smith* v. *City of Little Rock*, 279 Ark. 4, 648 S.W.2d 454 (1983). The least that can be said in the present case is that Clark either had in his possession, or had access to, all relevant and material facts relating to this transaction. We recognize that the seller had a duty to disclose but we think the chancellor could have found from the evidence that such disclosure as is required by law was made in this case. *Titan Oil & Gas, Inc.* v. *Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974).

The purchase in this case was more a purchase of a business than of stock. The stock had never been traded on the market. The earnings per share were not discussed. In such cases it has been held that the securities laws are inapplicable. *Ballentine* v. *Ballentine*, 275 Ark. 212, 628 S.W.2d 327 (1982); *United Housing Foundation, Inc.* v. *Forman*, 421 U.S. 837 (1975); *Canfield* v. *Rapp & Son, Inc.*, 654 F.2d 459 (7th Cir. 1981). Appellant had agreed to purchase another third of the Spaulding stock prior to the time he closed the deal with appellee on July 14, 1980. With this acquisition he owned two-thirds of the stock and shortly

thereafter became the chief executive officer of Spaulding Sporting Goods, Inc. and his son-in-law Ronnie Roach became president. He had successfully taken over the business.

Having found that the trial court's ruling was not clearly erroneous inasmuch as it was found there were no material misrepresentations or concealments we do not reach the matter of rescission. The chancellor did not shift the duty of the seller to reveal and disclose material facts to the buyer. The appellee was an employee and a stockholder but he had been denied policy making authority. He probably had no more inside information than appellant at the time of closing the transaction. The misstatement or nondisclosure of facts must be such that a reasonable person would consider it important in making a decision before it is material. *Lane v. Midwest Bancshares Corporation*, 337 F. Supp. 1200 (E.D. Ark. 1972). If there was no material misrepresentation or failure to disclose then there is no right to rescind.

Appellants argue the chancellor erred in failing to find that appellee breached his agreement not to compete with Spaulding. The agreement as modified and signed by the parties states in part as follows:

> It is understood and agreed that Rogers will be or may become associated with the firm, Sportstop, Incorporated, and/or his son James W. Rogers, and that Rogers will not be in violation of the foregoing covenant by virtue of such association and his activities connected therewith, whether it be in the capacity as an employee, officer, partner, advisor, consultant, lender, stockholder, or any other type of association.

Rogers is now associated with Sportstop, Incorporated. The above quoted sentence clearly states that appellee will not be in violation of the agreement by working for Sportstop in any capacity. Therefore, the chancellor's decree holding that there had been no violation of the agreement is not clearly against the preponderance of the evidence.

Affirmed.

HOLLINGSWORTH, J., not participating.