J&C INVESTMENTS, et al *v.* MID-SOUTH DRILLING, INC., et al

85-20                                    691 S.W.2d 853

Supreme Court of Arkansas
Opinion delivered June 24, 1985

*Henry & Duckett*, for appellants.

*Barron & Coleman, P.A.*, for appellees.

JOHN I. PURTLE, Justice. The chancellor heard this case for two days and then dismissed appellants' petition to rescind their purchases of units in Professional Drilling, a limited partnership. There is no doubt, and no dispute, that these units are securities within the meaning of the Arkansas Securities Act. See *Schultz v. Rector-Phillips-Morse, Inc.*, 261 Ark. 769, 552 S.W.2d 4 (1977). The sales of these securities were made pursuant to an exemption from registration under Ark. Stat. Ann. § 67-1248 (b)(9) (Repl. 1980) [hereinafter § 14 (b)(9)] and Rule 14 (b)(9) of the Arkansas Securities Commission. For reversal appellants argue that the facts of this case caused the transaction to lose its exempt status granted by § 14 (b)(9). We hold that the transaction did not lose its exempt status by the actions taken in this case and the trial court did not err.

Jim Dooley, John McCracken and Steve Hockersmith formed a corporation, known as Mid-South Drilling, Inc., for the purpose of being the corporate general partner in a limited partnership called Professional Drilling Limited Partnership. The purpose of all the parties was to obtain an oil well drilling rig and drill for hire. McCracken and Hockersmith were the stockholders and directors of Mid-South. Dooley was president of Mid-South and Hockersmith was Vice President and Secretary-Treasurer. Dooley was also the individual general partner in Professional Drilling.

The limited partnership was formed pursuant to Ark.

Stat. Ann. §§ 65-501 - 65-566 (Repl. 1980). Mid-South and Dooley retained 20% of the limited partnership and 80% was sold to investors in units at a price of $34,375 each. The appellees filed a proof of exemption from registration with the Arkansas Securities Commission under § 14 (f) and Rule 14 (b)(9). The rule prohibits the use of public advertising or solicitation in connection with an offering of this type. Public advertising is defined by the Commission's Rule 13 as follows:

> Public advertising shall mean any form of general solicitation, general advertising or any other communication directed at random to persons whose background is unknown to the communicant, including but not limited to, the following:
>
> (1) Any advertisement, article, notice or other communication published in any newspaper, magazine, or similar medium or broadcast over television or radio;
>
> (2) Any seminar or meeting or invitation to or promotion of such meeting or seminar;
>
> (3) Any letter, circular, handbill, notice or other written communication; or,
>
> (4) Any telephone solicitation.

The appellants were acquainted with McCracken and Hockersmith and, to some extent, with Dooley. Six letters were written by persons unconnected with the offering on behalf of the promoters of the venture. Four were addressed "to whom it may concern" and two each to Dooley and McCracken. Some letters were in praise of Dooley and others were to the effect that prospects for leasing the rig were good. Also, there was testimony that the promoters told prospective buyers that the rig was a new one when in fact it was assembled from both new and rebuilt parts.

The exemption employed by appellees also prohibits sales commissions and other remuneration for the solicitation of buyers. The offering memorandum stated that Mid-South would receive a fee of $125,000. Part of the fee, $28,125, would be for services in obtaining long-term financing and the balance of $96,875 would be for supervising the construction of the drilling rig.

In filing the proof of exemption with the Commission, the

fees set out above were mentioned. The Commission responded that the fees would not be considered as remuneration for solicitation if the charges were reasonable in light of the services performed. Included in the offering memorandum was an instrument entitled "Construction Supervision Agreement" between Professional Drilling and Mid-South in which Mid-South agreed to supervise construction of the rig and see that it was suitable for the partnership.

Through the sale of investment units and considerable bank financing the partnership eventually obtained a drilling rig and a contract to drill a well. All did not go well. Among other things the mud pumps for the drilling rig failed to perform satisfactorily. The net result was that, through the failure of the rig and lack of other leases, the project failed. The banks repossessed the rig and the investors lost their money. Appellants filed suit against the appellees alleging that appellees had violated the securities act exemption by use of unauthorized literature. Appellants also alleged that appellees violated the exemption by accepting commissions or other remuneration for the solicitation of buyers. Finally, it was alleged that the appellees offered and sold securities by means of untrue statements of material facts and by failure to disclose facts which should have been revealed. Appellants claimed the right to rescind their purchases, and asked for the return of all consideration paid, together with interest, costs and reasonable attorney's fees. A trial was held after which the trial court entered its decree dismissing the appellants' cause of action. Appellants rely upon three arguments, which will be set out below, in support of their claim that the case should be reversed.

I

THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLEES VIOLATED THE CLAIMED SECURITIES ACT EXEMPTION BY THE USE OF SALES LITERATURE AND APPELLANTS ARE ENTITLED TO RESCISSION UNDER ARK. STAT. ANN. § 67-1256 (a)(1).

The argument under this point is that the letters exhibited to prospective buyers were public advertising which voided the exemption under Rule 14 (b)(9). It is not alleged or proved that the letters were shown to anyone other than those offerees included in the exempt offering. Rule 14 (b)(9) prohibits

any form of public advertising or solicitation. Specifically included in Rule 13's definition of prohibited items are "letters." Some of the letters were indeed addressed "to whom it may concern." However, the letters were exhibited upon request of the prospective buyers by one of the officers of Mid-South. There is no evidence that the material was exhibited to the general public in any manner. We think that the "letters" prohibited by Rules 13 and 14 (b)(9) are those directed at random to persons whose background is unknown to the communicant. Hockersmith testified that the letters were shown only to offerees who specifically asked about something addressed by the letters. It seems to us that the type of communication employed here is not the type intended to be prohibited. The trial court had the right to believe Hockersmith. It is also possible that failure to disclose the material contained in some of the letters would have put appellees in violation of Ark. Stat. Ann. § 67-1235 (Repl. 1980). That statute makes it unlawful to fail to state a material fact which would prevent the offeror's material from being misleading. We cannot say that the trial court was clearly in error in finding that the use of these letters did not violate the exemption from registration.

## II

THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLEES VIOLATED THE CLAIMED SECURITIES ACT EXEMPTION BY THE RECEIPT OF SALES COMMISSIONS OR OTHER REMUNERATIONS AND APPELLANTS ARE ENTITLED TO RESCISSION UNDER ARK. STAT. ANN. § 67-1256 (a)(1).

On the front end, in the offering memorandum, it was stated that Mid-South would reserve the sum of $125,000 from the proceeds of the offering. Of this sum, the amount of $28,125 was to be paid to Mid-South for negotiating and obtaining long-term financing. The remaining $96,875 was the fee for supervising the assembly of the drilling rig. It is not disputed that, under the exemption, appellees are not entitled to any fee for solicitation and sales of the partnership units. Appellees informed the Securities Commission of the intended charges and inquired whether payment of such charges would violate the exemption. The Commission advised that such charges would not be considered fees for sales or solicitation provided the charges were

reasonable in light of the services performed. The Commission's interpretation of this provision of the exemption seems to be in line with the view taken by a majority of the courts and securities commissions which have dealt with the issue. *See* J. Long, *1985 Blue Sky Law Handbook* § 5.05 [5]. There was a lot of testimony as to whether the charges were reasonable in light of the circumstances. Dooley accompanied the tool pusher to the construction site and made some changes on the rig, which was then 50% completed. The rig was purchased from L.P.C., Inc. The contract provided that L.P.C. would construct the drilling rig for Mid-South for the sum of $2,250,000. Mid-South was granted the right to inspect the rig during construction and to reject all or part of the rig. Dooley had in fact never been a tool pusher, nor had he ever supervised the assembly of a rig or drilled a well. One of the letters mentioned earlier was from Jerry Jones, who is a successful person in the oil business. His letter indicated that Dooley was the equivalent of an engineer in supervising employees and in rig maintenance. Appellants vigorously argue that these fees were merely a sham to justify payment of fees to McCracken and Hockersmith, the stockholders in Mid-South, the corporate general partner. They contend the fees bore absolutely no relationship to the services provided by Mid-South and its officers. Again, evidence was offered on both sides in support and against the reasonableness of the fees. The trial court found, "that the fees paid were customary and not excessive in light of the services rendered, nor did the said fees constitute sales commissions or other remuneration within the meaning of the act." McCracken, Hockersmith and Dooley did not individually receive any of the $125,000 fee which was paid to Mid-South. The appellants offered no independent evidence to prove that the fees were unreasonable. Since the fees were set out in the offering memorandum, qualifiedly approved by the Commission and endorsed by the trial court's finding, we hold that the charges in this case did not violate the securities act exemption.

## III

THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLEES OFFERED AND SOLD SECURITIES BY MEANS OF UNTRUE STATEMENTS OF MATERIAL FACTS AND BY OMISSIONS OF MATERIAL FACTS AND APPELLANTS ARE ENTITLED TO RESCISSION UNDER ARK. STAT. ANN. § 67-1256 (a)(2).

Appellants argue that the appellees are liable pursuant to the provisions of Ark. Stat. Ann. § 67-1256 (a)(2) (Repl. 1980) in that said statute imposes liability on a seller of securities for making untrue statements of facts or failing to state a material fact which is necessary in order to make the statement made not misleading. There is a duty to disclose all material facts to a purchaser of securities. *Lane* v. *Midwest Bancshares Corp.*, 337 F. Supp. 1200 (E.D. Ark. 1972); *C&C Electric Const. Co., Inc.* v. *Rogers*, 281 Ark. 178, 663 S.W.2d 707 (1984). The appellants claim representations were made that the rig was new when in fact it was not new. The testimony at the trial indicated that, with few exceptions, the rig was assembled with new or rebuilt parts. There was testimony that this is the usual and customary manner of assembling drilling rigs. Also, there was a claim that Mr. Dooley's experience was overstated. At trial he testified that he had participated in the "nuts and bolts" of at least 50 rigs and that none of them were constructed of entirely new' parts. The partnership paid the sales tax on a new rig. Another argument was that the offerors had overstated the availability of work for the rig. Testimony was adduced at the trial that at the time the venture started, work was plentiful but by the time it started drilling, the economy had drastically changed. None of the materials used by appellees represented anything more than the belief that *if* all went well with the first drilling job, more would be forthcoming. No statement was made that any contracts were certain to materialize.

Since there was direct and material testimony in favor of appellees on all contested matters, we cannot hold that the chancellor's decision was clearly erroneous.

Affirmed.

HOLT, C.J., and GEORGE ROSE SMITH, J., not participating.