Lawrence ADKINSON *v.* John C. KILGORE

CA 97–1108                                          970 S.W.2d 327

Court of Appeals of Arkansas
Division III
Opinion delivered June 24, 1998

*Wilson, Walker & Short,* by: *Charles M. Walker,* for appellant.

*Kinard, Crane & Butler, P.A.,* by: *Steve R. Crane,* for appellee.

JUDITH ROGERS, Judge. This appeal is brought from an order of the Lafayette County Chancery Court decreeing that appellant should recover nothing on his complaint against appellee for the breach of two lease contracts. We reverse.

On August 30, 1988, appellee executed two contracts whereby he leased certain parcels of land from Mrs. Lanie Adkinson, appellant's mother. The first contract (hereafter "the pasture lease") encompassed 510 acres of pasture land. It called for an annual rental payment of $3,000 and was to run from January 1989 to December 1998. The second contract (hereafter "the crop lease") encompassed 250 acres of farm land and called for an annual rental payment of $17,500. It is disputed whether this contract was to run through 1992 or 1998.

Appellee paid all rentals required by the contracts through 1990. In May of that year, the Red River flooded, and the lands leased by appellee sustained considerable damage. Only one acre of the pasture land and twenty-five acres of the farm land escaped the ravages of the flood. The damage consisted of fences being washed away, debris and sand being deposited on the property, scouring of the land, and large sinkholes being left in the ground.

After the flood, appellee contacted Mrs. Adkinson and informed her that he could not rebuild the fences and make other necessary repairs while still paying $3,000 per year on the pasture lease. He orally renegotiated his lease with Mrs. Adkinson to pay $1,500 per year on the pasture land. When the pasture's grass began to grow back faster than expected, appellee decided to pay Mrs. Adkinson $2,000 per year rather than $1,500. Accordingly,

he paid $2,000 per year on the pasture lease from 1991 through 1995. As far as the repair expenses incurred by appellee, he testified that he spent between $6,000 and $7,000 on fencing material, between $10,000 and $12,000 to level the land, and between $4,000 and $6,000 for grass fertilizer. With reference to the land covered by the crop lease, appellee testified that he rebuilt a road that led to the land and that he made efforts to get organic matter back into the soil. He did not testify that he renegotiated his lease with Mrs. Adkinson as to this particular property. Consequently, he continued to pay $17,500 per year on the crop lease through 1993.

Shortly after the flood occurred in 1990, Mrs. Adkinson deeded the leased property to appellant; however, Mrs. Adkinson continued to deal with all matters concerning the leases until 1994.[1] In that year, appellant and appellee spoke for the first time regarding the leases. Appellee informed appellant that he could no longer afford to pay $17,500 for the crop lease. He proposed instead a rental of $12,000, with $6,000 to be paid up front and $6,000 to be paid later. Appellee paid $6,000 on May 7, 1994, but made no further payments on the 1994 crop lease. In early 1995, appellee contacted appellant again and asked for a reduction on the crop lease payment. According to appellee, a figure of $35 per acre was agreed upon, which would have amounted to a yearly rental of $8,750 for the 1995 crop lease. When no money was received from appellee by mid-1995, appellant's attorney sent correspondence to appellee seeking payments due on the lease contracts. According to appellant, he was owed $6,000 on the 1994 crop lease and $12,000 on the 1995 crop lease. No mention was made of the agreement to reduce the 1995 rental payment to $8,750. Further, appellant sought payment of an additional $1,000 per year for 1994 and 1995 on the pasture lease. No mention was made of the renegotiated payment of $2,000 per year.

On July 10, 1995, appellee received another letter from appellant's counsel, wherein counsel stated that appellant "advises me that he will accept your $11,000.00 payment on the past due

---

[1] Mrs. Adkinson died in 1996 and was thus unavailable to testify at the trial held on March 7, 1997.

rental together with your note for $9,000.00 plus an additional $1,000.00 for attorney's fees making the note for $10,000.00." The note was to bear a 9% interest rate payable on December 1, 1995. On July 21, 1995, appellee wrote two checks which totaled $11,000, but there is no evidence that a note was drawn up to cover the remaining $10,000 referred to in the letter. Later in 1995, appellee vacated the property.

On November 3, 1995, appellant filed suit against appellee, seeking past-due rents for 1994 and 1995. In his complaint, appellant sought $12,500 for 1994 (figured as the original $17,500 contract price on the crop lease, plus an additional $1,000 owed on the pasture lease, less the $6,000 already paid by appellee) and $7,500 for 1995 (figured as the $17,500 original contract price, plus an additional $1,000 on the pasture lease, less $11,000 already paid by appellee). Appellee answered by alleging as set-off the value of improvements and repairs made by him and further claimed that appellant's retention of the improved land without such a set-off would unjustly enrich appellant.

A trial was held on March 7, 1997, during which the chancellor heard the testimony of appellant, appellee, and other witnesses. In his seven-page letter opinion dated May 7, 1997, the chancellor found that appellee and Mrs. Adkinson had modified the pasture lease rental from $3,000 per year to $2,000 per year; that there was an agreement between appellee and Mrs. Adkinson that appellee would be compensated for the cost of improvements to the property; and that it would unjustly enrich appellant to keep all improvements made by appellee and still recover $20,000 for unpaid rent. Finally, the chancellor noted that, based upon the evidence at trial, the value of the improvements made by appellee, whether measured by their cost or by the difference in the value of the land before and after improvements, exceeded any amount of rent claimed by appellant. Therefore, the chancellor ordered that appellant take nothing by his complaint. This appeal followed.

We begin by noting that chancery cases are reviewed *de novo*. *Golden v. Golden*, 57 Ark. App. 143, 942 S.W.2d 282 (1997). However, a chancellor's findings will not be reversed unless they are clearly erroneous. *Brown v. Cole*, 27 Ark. App.

213, 768 S.W.2d 549 (1989). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Turner v. Benson*, 59 Ark. App. 108, 953 S.W.2d 596 (1997).

■ Appellant argues first that the chancellor erred in finding that there was an agreement between his mother and appellee to reduce the rental payment on the pasture lease until appellee could recoup the cost of his improvements. He cites *E.E. Terry, Inc. v. Cities of Helena and West Helena*, 256 Ark. 226, 506 S.W.2d 573 (1974), and *Jones v. Felker*, 72 Ark. 405, 80 S.W. 1088 (1904), for the proposition that a landlord is not liable for repairs made by a tenant where there was no agreement by the landlord to pay for repairs. According to appellant, there was no evidence of such an agreement with regard to the pasture lease other than appellee's testimony as to the $1,000.00 per year reduction of the pasture rental, and appellant's and his mother's acceptance of such an amount for 1991, 1992 and 1993. Appellee's testimony coupled with appellant's and Mrs. Adkinson's acceptance of the $2,000 payments obviously convinced the chancellor that Mrs. Adkinson had agreed to allow appellee to reduce the amount paid on the pasture lease to recoup the cost of his improvements. Further, there was no testimony to the contrary by appellant. In fact, appellant admitted that his mother had handled all matters regarding the leases prior to 1994 and that, if she had renegotiated a lease, he probably would not have known about it. Giving due regard to the chancellor's ability to observe the witnesses, we cannot say that the chancellor's finding on this point is clearly erroneous. *See Ballentine v. Ballentine*, 275 Ark. 212, 628 S.W.2d 327 (1982).

■ Appellant's next argument is the same as the first but concerns the crop lease rather than the pasture lease. According to appellant, there is no evidence that his mother and appellee agreed to reduce the rental on the crop lease in exchange for appellee's improvements to the land. Appellant is correct. Appellee never testified that he renegotiated the crop lease with Mrs. Adkinson with an eye toward recouping the cost of his improvements. His testimony mentions only a renegotiation of the pasture lease in

that regard. In fact, appellee paid the original rental price on the crop lease during the years 1991, 1992, and 1993 and renegotiated the 1994 and 1995 leases without reference to cost of improvements. Therefore, the chancellor erred in determining that appellee was entitled, by virtue of an agreement, to set off the value of improvements against money owed by him on the crop lease.

Appellant's final argument concerns the amount that remains due and owing in rent for the years 1994 and 1995. Appellant contends that the amount should be calculated based on the July 10, 1995, letter written by his counsel to appellee. As evidenced by this letter, appellant agreed to accept for all past-due rent an immediate payment of $11,000 to be followed by a note in the amount of $10,000. The record does reflect that appellee made a payment of $11,000 shortly thereafter, on July 21st. If appellant's contention is correct, then appellee owes $10,000.

On the other hand, the record discloses that the parties negotiated a rental price of $12,000 for 1994, of which only $6,000 was paid. The record also contains appellee's testimony that the 1995 rent for the crop land was to be $35 an acre, for a total of $8,750. Based on this evidence, appellee would have owed a total of $20,750 for both years ($12,000 for 1994 and $8,750 for 1995). The record shows that appellee paid $6,000 in 1994 and $11,000 in 1995, thus leaving a balance due of $3,750.

■ ■ Upon *de novo* review of a fully developed chancery record, where we can plainly see where the equities lie, we may enter the order that the chancellor should have entered. *Mathews v. Oglesby*, 59 Ark. App. 127, 952 S.W.2d 684 (1997). While the chancellor noted the conflicting proof, he made no finding as to which version was to be believed, finding instead that the cost of improvements made by appellee greatly exceeded any claim of past-due rent. Given the conflicting evidence in the record, we cannot plainly see where the equities lie, and we believe that the interests of justice will best be served by remanding the case for the chancellor to determine the amount of past-due rent.

■ Before leaving this issue, however, we must address appellee's contention that appellant would be unjustly enriched by the receipt of rental payments and retention of improvements to

the property. The doctrine of unjust enrichment is applied in cases in which services have been performed, whether requested or not, which have benefitted a party. *Dews v. Halliburton Indus., Inc.*, 288 Ark. 532, 708 S.W.2d 67 (1986). It has been said that, in the case of consensual contracts, the agreement defines the duty, while in the case of quasi-contracts, the duty defines the contract. *Sparks Regional Med. Ctr. v. Blatt*, 55 Ark. App. 311, 935 S.W.2d 304 (1996). The duty that forms the foundation of a quasi-contractual obligation is frequently based upon the doctrine of unjust enrichment. *Id.* Unjust enrichment is the principle that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. *Id.* To be unjustly enriched, a party must have received something of value to which he was not entitled and which he should restore. *Id.* However, there must also be some operative act, intent, or situation to make the enrichment unjust and compensable. *Dews v. Halliburton Indus., Inc., supra.* Courts will only imply a promise to pay for services where the services were rendered in such circumstances as authorized the party performing them to entertain a reasonable expectation of payment. *Id.*

■ ■ In this case, there is no question that appellee was authorized to expect reimbursement for his improvements by reduction of the rentals on the pasture lease. However, there is no evidence that he could rightfully expect any such reimbursements to come from a reduction in the crop lease payments. The doctrine of *caveat lessee*, which states that unless a landlord agrees with his tenant to repair leased premises he cannot, in the absence of a statute, be compelled to do so, is firmly established law in this state. *Propst v. McNeill*, 326 Ark. 623, 932 S.W.2d 766 (1996). Appellee should not be permitted to frustrate this law in circumstances where he had no basis to expect recoupment of his costs of improvement. Further, one who officiously confers a benefit upon another is not entitled to restitution therefor. *Childs v. Adams*, 322 Ark. 424, 909 S.W.2d 641 (1995). Finally, where

there is an express contract in existence, the law will not imply a quasi-contract. *Coleman's Serv. Ctr. v. Federal Deposit Ins. Corp.*, 55 Ark. App. 275, 935 S.W.2d 289 (1996). The law never accommodates a party with an implied contract where there has been a specific one on the same subject matter. *Id.* By appellee's own testimony, the parties herein agreed to certain rental amounts on the crop lease for 1994 and 1995 without reference to appellee's expenses incurred for improvements.

In light of the foregoing, we hold that appellant is entitled to the payment of rent for the 1994 and 1995 crop leases and that he is not unjustly enriched by retention of the improvements on the property that is the subject of the leases. We reverse and remand for proceedings not inconsistent with this opinion.

Reversed and remanded.

CRABTREE and MEADS, JJ., agree.