Mary Etta SONGER *v.* Mildred (Robertson)
WIGGINS and Laura Land (Robertson) Saller

CA 99-1449                                    27 S.W.3d 755

Court of Appeals of Arkansas
Division I
Opinion delivered October 4, 2000

*Grider Law Firm, PLC*, by: *Murrey L. Grider*, for appellant.

*Barrett & Deacon*, by: *Robert J. Gibson*, for appellee.

WENDELL L. GRIFFEN, Judge. Mary Etta Songer, the only child of decedent M.O. Robertson, appeals a Craighead County chancery court decision that quieted title in Songer in an undivided one-half interest of a 100-acre farm, subject to a life estate interest in appellee Laura Robertson Saller,[1] located in Craighead County. The chancellor awarded the remaining one-half, undivided interest to appellee Mildred Wiggins. Songer argues on appeal that the chancellor erred in determining that title to the property did not pass by intestate succession and that Songer was not entitled to the entire farm. We hold that the chancellor properly admitted the decedent's unprobated, duly executed, and nonrevoked will as evidence of devise of property. Therefore, we affirm.

M.O. Robertson died testate on November 6, 1990, survived by his wife, appellee Laura Robertson Saller; his daughter, appellant Mary Etta Songer; his sister, appellee Mildred Robertson Wiggins; other siblings; and grandchildren. Following his death, decedent's will was read by his attorney in the presence of appellant, appellees, and others. The will, executed on May 16, 1983, left an undivided one-half interest outright in a 100-acre tract of farmland to appellee Wiggins, and the other undivided one-half interest to appellee Saller "for her life with the remainder in Citizens Bank of Jonesboro as Trustee of the M.O. Robertson Family Trust to hold, manage and effectively dispose of as set forth in paragraph THIRD of this my Last Will and Testament." Paragraph three provided that the trustee pay the net income from the trust to appellee Saller for

---

[1] Laura Robertson remarried after decedent's death. She is referred to in this opinion as Laura Robertson Saller.

her life. After her death, the trustee was to pay the net income and principal of the trust, if necessary, for the health, education, support, maintenance, and comfort of appellant Songer up to the amount of $500 per month. Upon the death of Songer, the trustee was to terminate the trust and distribute the remainder to appellant's son, Douglas Songer.[2] The parties stipulated that the will was never probated, and that decedent died more than five years ago.[3]

According to testimony offered at trial, after the reading of the will appellees met with James Brewer, a farmer who rented the farmland from decedent. Before his death, decedent and Brewer operated under an agreement whereby Brewer would pay one third of the crop as rent and retain two-thirds of the crop for himself. Expenses were split at the gin. Decedent also paid a part of the fertilizer cost and all of the real estate taxes. Appellees identified themselves to Brewer as the new owners of the property and told him they wanted to continue the same arrangement Brewer had with decedent. They also gave Brewer a power of attorney which allowed him to sign documents on their behalf.

Over the next nine years, appellees called Brewer once or twice a year and visited the farm two or three times a year. They also conversed with Brewer about various crop yields. In addition, appellees completed government documents indicating their ownership of the property. Government subsidies were received in the form of two checks, with one check for one-third of the subsidy payable to appellees and another check for two-thirds payable to Brewer. Appellees divided the costs and expenses associated with the farm. They equally paid real estate taxes and levee district taxes on the property as well as crop and liability insurance out of their own funds. Copies of Profits and Loss in Income Statements filed by appellee Wiggins from 1992 to 1998 were introduced into evidence, as well as copies of checks payable to the Craighead County tax collector for the years 1991 through 1999.

---

[2] Douglas Songer, the adult son of appellant, by pleading and acquiescence, waived any interest in the property. According to appellant's testimony at trial, he agreed with his mother's position regarding her claimed interest in the property.

[3] Although a codicil to the will was executed on January 27, 1989, the codicil addressed the consequences of appellee Saller preceding decedent in death. The codicil is not at issue in the present litigation.

Although ninety-five acres of the 100-acre tract was farm property, a dilapidated house sat on the remaining five acres. According to the testimony of Brewer, Saller, Mildred Wiggins, Tony Wiggins, and Farrell Wiggins the house had termite damage and was in bad shape when decedent died. Saller testified that the house was in terrible condition and infested with termites prior to her husband's death. She stated that decedent did not rectify the termite situation, although he was aware of it and tried various home remedies such as putting moth balls under the house. Appellant testified that the house was in rentable condition and that renters continued to live in the house until a bridge leading to the property collapsed. Saller confirmed that she received rent for the house from the same tenants who lived in the house before her husband died. She told the court that she received $75 per month for rent, and that the tenants stayed in the house two or three years after her husband died.

The chancellor also heard testimony regarding the collapse of the bridge leading to the property. The bridge collapsed three or four years prior to the instant litigation. Brewer testified that he discussed repairing the bridge with appellees. He stated that when appellees told him it would cost $11,000 to repair the bridge, Brewer advised them against repairing the bridge. As a result, appellees brought some posts, set the posts in concrete, put a chain across the posts, and posted a no trespassing sign. Brewer gained access to the farm by crossing a neighbor's property. Both Brewer and Farrell Wiggins, husband of appellee Wiggins, testified that the purpose of the posts and chain was to keep people from crossing the bridge because appellees did not want to assume responsibility for injuries.

Appellee Wiggins testified that appellant did not object when the will was read. Wiggins stated that she assumed the will was probated, and acted under that presumption until July or August of 1997, when her attorney in Missouri advised her to contact attorney Coleman. Once Wiggins found out that the will had never been probated, she filed a suit on behalf of herself and Saller to quiet title in the property.

The chancellor entered a decree quieting title in Wiggins and Songer. The chancellor awarded an undivided one-half interest in Wiggins and the remaining undivided one half interest in Songer,

subject to the life time possessory interest of Saller. He initially noted that decedent was the owner in fee simple absolute of the farm. He found that: 1) the May 16, 1983, will was the duly executed and nonrevoked will of decedent; 2) there were no proceedings in probate court concerning administration of the estate; 3) the time to proceed in probate had expired; 4) both parties to the instant litigation were present at the reading of the initial will; 5) based on the reading, appellees took possession of the farm and acted pursuant to the will; 6) appellees farmed the land through a tenant farmer, received a share of rent and profits, and equally shared the costs of expenses, taxes and insurance on the property; 7) appellant was aware that appellees took possession and assumed the will was admitted to probate; and 8) appellant knew that the possession of an undivided one half interest by Wiggins was adverse to any claim of ownership she may have had. Based on the conditions and circumstances before it, the chancellor found Arkansas Code Annotated section 28-40-104 applicable. He then admitted decedent's Last Will and Testament as evidence concerning the devise of the 100-acre tract.

The chancellor found by clear and convincing evidence that: 1) Wiggins took possession of the property according to the will provisions; and 2) Wiggins continuously maintained open and adverse possession of the property during the entire time following the reading of the will. The chancellor then quieted title of an undivided interest in Wiggins. Regarding appellee Saller, the chancellor observed that appellant presented no claim to dispossess her of an undivided one-half life estate interest. However, he found that the evidence supported a finding that she was entitled to a possessory interest in an undivided one half interest during her lifetime. The chancellor noted that the trust referred to in the will was not set up or implemented. He further noted that Douglas Songer acquiesced to appellant's position and waived any interest he had in the property. As a result, he found title in the remaining undivided one-half interest, subject to the life interest of Saller, in appellant. Appellant argues that the trial court erred in its determination that title to the 100-acre farm did not pass by intestate succession. Appellees respond that the chancellor correctly applied section 28-40-104 and allowed the introduction of decedent's executed and unrevoked will as evidence of a devise. They strenuously

assert that because they, in good faith, acted in accordance with the will, the chancellor's findings were not clearly erroneous. We agree.

■ We begin by noting that we review chancery cases *de novo*. However, we will not reverse a chancellor's findings unless they are clearly erroneous. *See Mixon v. Mixon*, 65 Ark. App. 240, 243, 987 S.W.2d 284, 285 (1999). Findings are considered clearly erroneous when, even though there is evidence to support them, we are left definitely convinced that a mistake has occurred. *See Adkinson v. Kilgore*, 62 Ark. App. 247, 252, 970 S.W.2d 327, 329 (1998).

■ Section 28-40-104 of Arkansas Code Annotated provides that unless a will is declared valid by the probate court, it is not effective to prove the transfer of property. *See* Ark. Code Ann. § 28-40-104(a)-(b) (1987). However, a duly executed will that is not probated may be admitted as evidence when two conditions are satisfied. First, no probate proceeding concerning the administration of the estate must have occurred; and second, the devisee must possess the property in accordance in the will's provisions. *See id.* at (b)(1)-(2). The purpose of the statute is to provide evidence for those claiming ownership of property who have been in possession of the property consistent with the provisions of an nonrevoked, nonprobated will. *See Johnson v. Johnson*, 292 Ark. 536, 539, 732 S.W.2d 121, 123 (1987) (interpreting Ark. Stats. Section 62-2126; now codified at Ark. Code Ann. § 28-40-104). It gives effect to the testator's unrevoked, nonprobated will, so long as the conditions previously noted are met. *See Smith v. Ward*, 278 Ark. 62, 63, 643 S.W.2d 549, 550 (1982) (interpreting Ark. Stat. § 62-2126.1, now codified at Ark. Code Ann. § 28-40-104).

*Johnson v. Johnson* involved the case of a widow seeking to admit as evidence an unprobated will, which she alleged proved her entitlement to one half of the estate's assets. *See Johnson* at 538, 732 S.W.2d at 122. The chancellor denied the request, and our supreme court affirmed. In upholding the chancellor, the court interpreted the language of the statute as requiring actual, rather than constructive, possession. *See id.* at 539, 732 S.W.2d at 123. The court noted that the certificate of deposit at issue in the case remained in the possession of the bank, and was payable to the estate. Thus, the court determined that the chancellor correctly ruled that appellant did not meet the statutory requirement of actual possession. *See id.*, 732 S.W.2d at 123.

■ In the instant case, appellant contends that pursuant to the rationale set forth in *Johnson,* unless Wiggins and Saller *physically possessed* the farm, they have not met the requirement of actual possession. Appellant's interpretation is too narrow. Actual possession may exist without Wiggins and Saller living on the property, or farming the land themselves. When decedent died, the property was farmed through a tenant farmer. Immediately following decedent's death, appellees made the tenant aware that they owned the land, and that they intended to continue the arrangement the tenant had with decedent. Appellees conferred with the tenant farmer about what crops to grow and the operation of the farm. They would also visit the farm two or three times a year. Appellees signed a power of attorney and completed government documents. Further, they received subsidies from the government, and one-third of the profits generated by the tenant farmer as rent. As the will provided, appellees split the costs and income of the property evenly. They also split the costs of expenses, insurance, real estate taxes, and levee taxes. When the bridge collapsed, appellees posted no trespassing notices and blocked access to the bridge. All of these facts provide ample proof that appellees actually possessed the property in accordance with the will's provisions. The chancellor's findings are not clearly erroneous.

Affirmed.

HART and JENNINGS, JJ., agree.