The Honorable Brenda Gullett State Senator #28 Longmeadow Pine Bluff, AR 71603
Dear Senator Gullett:
You have requested my opinion concerning the following scenario:
 In the mid-1990's, the City of Pine Bluff entered into an interlocal agreement with the county to establish a communications network to dispatch emergency and non-emergency calls received via 911 and other means. The newly created entity was called "MECA," an acronym for Metropolitan Emergency Communications Association.
 As a part of the agreement, city police and fire department dispatchers were assimilated into the new entity. Two of the employees who went to MECA as part of the agreement were allowed to remain in the City's retirement system because of the length of time they had in the program. To accomplish this, MECA reimburses the City on a monthly basis for their salary, retirement and other benefits. Because these two persons are carried in the retirement system, this means that the City has them enrolled in its health care benefits, life insurance, dental insurance, show them as employees on its Form 941 Employer's Quarterly Federal Tax Return, allows them to participate in the credit union membership available to city employees, reports them as city employees for Social Security and Medicare purposes and carries them on its Worker Compensation ledger which results in their being factored into the City's premium.
 On the job, these two employees are supervised by MECA staff and have been guided by MECA's policies and procedures manual without complaint. Recently the MECA board of directors established a policy that allows employees to carry over only 10 days of vacation to the next calendar year. Previously, this number had been 45 days. This City has a 45-day carry-over policy still in effect. Upon death or retirement, employees are allowed to cash in these days. The interlocal agreement is silent on this issue of "employee benefits and personnel policy." The two affected employees and some of those serving on the board at the time of establishment of MECA say they were told they would be able to retain their "retirement benefits."
In light of the foregoing scenario, you have presented the following questions:
 (1) Are these two employees MECA employees or City of Pine Bluff employees?
 (2) Can they avail themselves of the City's vacation policy or can MECA pay them now for the excess days and impose the 10-day maximum?
RESPONSE
Question 1 — Are these two employees MECA employees or City of Pine Bluffemployees?
I am unable to answer this question definitively because I do not have all of the factual information that would be necessary to formulate a definitive answer. The interlocal agreement by which MECA was created does not address the issue you have raised. It does not mention the assimilation of city police and fire dispatchers into the new entity. Accordingly, I must conclude that this assimilation was accomplished by means of a separate contractual agreement with the dispatchers. This separate contractual agreement will govern the issue.
If this separate contractual agreement with the dispatchers was formalized and expressed in any way, those express terms of course will govern. Adkinson v. Kilgore, 62 Ark. App. 247, 970 S.W.2d 327 (1998) (where there is an express contract, the law will not imply a quasi-contract).
If the agreement was not formalized or expressed, the arrangement with the dispatchers may constitute an implied contract. If that is the case, the terms of the contract will be implied from the conduct of the parties, which will be evidence of their intent. Pettus v. McDonald II,343 Ark. 507, 36 S.W.3d 745 (2001). These are all questions of fact that I am neither authorized nor equipped to determine. However, I can point out that some of the pertinent facts will be what the employees were told, what they understood and believed they were agreeing to, what benefits they have received, and which entity has provided those benefits. I find it particularly pertinent that as you have described the situation, these employees received various types of city benefits in addition to being retained in the city's retirement system. All of these matters must be considered in determining the operative terms of any implied contract that exists between the employees and either the City or MECA. The various parties' local counsel are in a position to review these facts and to come to a consensus as to the appropriate legal determination of this issue.
Question 2 — Can they avail themselves of the City's vacation policy orcan MECA pay them now for the excess days and impose the 10-day maximum?
The answer to this question will of course depend upon the determination that is made concerning the contractual arrangement between the various parties, as discussed in response to Question 1. Because I am not in a position to make that determination, as indicated, I cannot answer this question.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General