SPARKS REGIONAL MEDICAL CENTER and Holt-Krock
Clinic *v.* Robert S. BLATT

CA 95-1361                                        935 S.W.2d 304

Court of Appeals of Arkansas
Division II
Opinion delivered December 18, 1996
[Petition for rehearing denied January 15, 1997.]

*Warner, Smith & Harris, PLC*, by G. *Alan Wooten* and *Kathryn Stocks Campbell*, for appellants.

*Mark E. Ford*, for appellee.

WENDELL L. GRIFFEN, Judge. Appellee, an attorney, filed suit to recover an attorney's fee based on the theories of quasi-contract and unjust enrichment. On cross-motions for summary judgment, the circuit court judge granted the appellee's motion and awarded the fee. We conclude that the grant of summary judgment was in error; therefore, we reverse and remand.

Joe H. Bell underwent major surgery at Sparks Regional Medical Center, one of the appellants herein. Bell was a beneficiary on his wife's health-insurance plan, which was self-funded by her employer, Crawford Memorial Hospital, and administered by Health Management Associates ("HMA"). One of the cost-saving features of the health plan called for all surgeries to be performed at Crawford Memorial. HMA refused to pre-certify Bell for admission to

Sparks. For reasons unclear in the record, he was admitted anyway and incurred medical expenses totaling $53,983.54. Bell also incurred an additional $2,847.27 in medical expenses at the Holt-Krock Clinic, the other appellant herein. HMA denied payment for both the Sparks and Holt-Krock bills totaling $56,830.81.

Soon after his discharge from the hospital, Bell retained the appellee to represent him in a suit against HMA for the denial of his medical claim. Bell and the appellee eventually signed a one-third contingency-fee agreement. On October 17, 1991, within five weeks of Bell's discharge from the hospital, the appellee filed a complaint in Bell's behalf against HMA in federal district court. Over the next few months, Bell's wife made at least two contacts with Sparks, offering assurances that the bill would be paid by HMA. On March 27, 1992, Bell's wife informed Sparks that HMA would not pay the outstanding amount, and she suggested that Sparks file a claim with Medicare. On March 30, 1992, Sparks filed a claim with Medicare and received partial payment in the amount of $11,155.00. By accepting this Medicare payment, Sparks evidently waived any action it might otherwise have had against Bell for the balance of the bill.

Just before the trial in federal court, Bell and HMA settled the case for $56,830.81 — the precise amount owing to Sparks and Holt-Krock. When a dispute arose over who should be included as payees on the settlement checks, HMA filed an interpleader action. The district court held that the money in question was properly characterized as "insurance proceeds" and, because Bell had executed viable assignments of any insurance proceeds received to Sparks and Holt-Krock, the entire amount of the settlement should go to them. This characterization of the settlement money as insurance proceeds was also confirmed in a related bankruptcy action[1], and both the district court and the bankruptcy court were affirmed by the Eighth Circuit Court of Appeals. In an unpublished per curiam opinion, the Eighth Circuit had this to say about attorney's fees:

In the District Court, counsel took the position that the fee

---

[1] In September, 1992, Bell filed a voluntary bankruptcy action. He was represented by the appellee in the bankruptcy proceeding and there contended that the interpled monies belonged to the bankruptcy estate rather than Sparks or Holt-Krock.

matter was not properly an issue in these cases, and we agree. Our action in these appeals is without prejudice to whatever rights the parties may have with respect to the fee matter. Unless the parties can come to an agreement, these rights will have to be determined in some other appropriate proceeding.

*In re Joe Hughes* v. *Sparks Regional Medical Ctr., et. al.*, Nos. 93-4051WA, 93-4055WA, slip op. at 3 (8th Cir. June 28, 1994).

The appellee then filed the action that is the subject of this appeal in the circuit court of Sebastian County. In his complaint, the appellee contended that he was entitled to a reasonable attorney's fee "for securing payment" of his client's indebtedness to Sparks and Holt-Krock. In its summary judgment decision, the trial court reasoned that the appellants were subject to a quasi-contract because they failed to pursue their own claims against HMA and knowingly accepted the benefits of the appellee's legal services, which were solely responsible for producing the recovery. Sparks and Holt-Krock were, therefore, held to have been unjustly enriched and were ordered to pay their pro rata amounts of a $15,225.27 fee to appellee.

██ The standard of review of a summary judgment is whether the evidentiary items presented by the moving party in support of the motion left a question of material fact unanswered and, if not, whether the moving party is entitled to judgment as a matter of law. *Nat'l Bank of Commerce v. Quirk*, 323 Ark. 769, 918 S.W.2d 138 (1996). The appellate court views all proof in the light most favorable to the party opposing the motion, resolving all doubts and inferences against the moving party. *Id*. Here, none of the material facts are in dispute; however, we cannot say that the appellee was entitled to judgment as a matter of law. Resolving all doubts in favor of the appellants, we are convinced that, to the extent they were enriched by the appellee's legal services, the enrichment was not unjust.

██ In the case of consensual contracts, the agreement defines the duty, while in the case of *quasi*-contracts the duty defines the contract. *Road Improvement Dist. No. 7 v. St. Louis-San Francisco Ry. Co.*, 172 Ark. 368, 288 S.W. 884 (1926) (emphasis in original). The duty which thus forms the foundation of a *quasi*-contractual obligation is frequently based on the doctrine of unjust enrichment.

*Id.* (emphasis in original).

■ A quasi-contract is not a contract; it is an equitable remedy. We have defined quasi-contracts this way:

> Quasi or constructive contracts (commonly referred to as contracts implied in law) are obligations which are imposed or created by law without regard to the assent of the party bound, 'on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. They rest solely on a legal fiction and are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises not from consent, as in the case of true contracts, but from the law or natural equity. Such contracts rest on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and on the principle that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do.'

*Jackson County Grain Coop.* v. *Newport Wholesale Elec. Inc.*, 9 Ark. App. 41, 652 S.W.2d 638 (1983) (citing *Dunn* v. *Phoenix Village, Inc.*, 213 F. Supp 936 (W.D. Ark. 1963). The doctrine of "unjust enrichment," that a person shall not be allowed to profit or enrich himself inequitably at another's expense, is not contractual, but is equitable in nature. *Klein* v. *Jones*, 980 F.2d 521 (8th Cir. 1992). The appellee reminds us in his brief that unjust enrichment and quasi-contract are equitable remedies founded upon an implied agreement to give reasonable value for services performed, and upon the principle that it would be unjust to allow the party receiving the benefit of such services to accept them without paying for them. *See Purser* v. *Kerr*, 21 Ark. App. 233, 730 S.W.2d 917 (1987).[2]

■ Unjust enrichment is

a general principle underlying various legal doctrines and

---

[2] We note here that although the appellee sought what is essentially equitable relief in a court of law, neither party raised a jurisdictional challenge in the circuit court or on appeal. Nor do we choose to raise it now even though it is within our prerogative to do so. *See Coran* v. *Keller*, 295 Ark. 308, 748 S.W.2d 349 (1988); *Estate of Puddy* v. *Gillam*, 30 Ark. App. 238, 788 S.W.2d 957 (1990) (Jennings, J., dissenting).

remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.

66 Am. Jur. 2d, *Restitution and Implied Contracts*, § 3 (1973).

■ The phrase "unjust enrichment" does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so. *Id.* (1996 Supp. citing *Lauriedale Assoc., Ltd.* v. *Wilson*, 7 Cal. App. 4th 1439, 9 Cal. Rptr. 2d 774 (1992). To find unjust enrichment, a party must have received something of value to which he was not entitled and which he should restore. *Duckworth* v. *Poland*, 30 Ark. App. 281, 785 S.W.2d 472 (1990). However, there must be some operative act, intent, or situation to make the enrichment unjust and compensable. *Id.* The courts will imply a promise to pay for services only where they were rendered in such circumstances as authorized the party performing them to entertain a reasonable expectation of their payment by the party beneficiary. *Id.* One who is free from fault cannot be held to be unjustly enriched merely because he has chosen to exercise a legal or contract right. *Whitley* v. *Irwin*, 250 Ark. 543, 465 S.W.2d 906 (1971).

The facts show that the appellee and his client executed a contingency-fee agreement covering "all amounts recovered." The agreement also provided that "[a]ll medical expenses and charges of any nature made by doctors in conjunction with the above-mentioned claim are not 'litigation costs' and will be paid by client out of his recovery." The appellee, presumably with his client's approval, settled the federal lawsuit against HMA for the exact amount of his medical expenses: $56,830.81. This settlement made no allowance for attorney fees. When this amount was subsequently interpled, the federal judge made no allowance for attorney fees. The U.S. Court of Appeals for the Eighth Circuit mentioned attorney's fees, but failed to reach the merits of that issue. All told, three federal courts (the bankruptcy court, the district court, and the Eighth Circuit Court of Appeals) agreed that the appellants were simply creditors who deserved to receive full payment of their debt, given the fact that a settlement was reached for the full amount and that

assignments had been executed in the appellants' favor.

■ In the instant action, the trial court agreed with the appellee's unjust-enrichment theory and granted summary judgment, relying, in part, on the appellants' failure to become involved in the federal litigation. We disagree because several undisputed facts are sufficient to raise the evidentiary posture of this case out of the realm of summary judgment for the appellee. First, the appellants' failure to become actively involved in the litigation initiated by appellee is understandable. They were told more than once by Bell's wife that the unpaid bill would be soon resolved. More importantly, their position as a creditor was protected, at least to some extent, by the assignments executed by Bell. In addition, the appellee conceded in his pleadings below that the federal lawsuit was initiated not to benefit the appellants, but to relieve his client of a substantial financial burden.[3] In that sense, the appellee won his case: he succeeded in enabling his client to avoid a large debt. As the subsequent bankruptcy proceeding revealed, the appellee's client was evidently in no position to pay a $56,000 medical bill out-of-pocket. For purposes of the fee agreement between the attorney and his client, there was no amount "recovered" by the client. As a result of the interpleader action, the settlement money flowed straight to the appellants.

■ Courts should be hesitant to employ a quasi-contractual theory of recovery where an underlying express contract already exists and fairly distributes the risks among the parties involved. *See Moeller v. Theis Realty, Inc.*, 13 Ark. App. 266, 683 S.W.2d 239 (1985). As with all litigation, there also existed the risk of no recovery at all. Therefore, the appellee here obtained a good result — indeed, the best result — for his client. Because the case was

---

[3] In another case with very similar facts, two attorneys filed suit seeking to recover a fee based on a quantum meruit theory. They represented two police officers who were acquitted of wrongdoing in separate jury trials. The attorneys then sued the city and various city officials claiming that the officers' acquittals also benefitted the city. An Ohio appellate court rejected their claim, holding that the two police officers were the real beneficiaries of the legal services performed by the attorneys; any benefit flowing to the city was "incidental." *Norton v. City of Galion*, 573 N.E.2d 1208 (1989).

While the benefit received by the appellants here may be more than "incidental," the point of the *Norton* holding is that, for quantum meruit purposes, the primary beneficiary of an attorney's work is the client, not some third party who also happens to gain from the outcome. The attorney still must look primarily to his client for his fee.

settled, it cannot be said the attorney, who must have been somewhat skilled in negotiations of this kind, was somehow unfairly denied a fee. He simply failed to protect his own interest in obtaining a fee while he was also protecting his client's interest.

■ The summary judgment must also fail because any enrichment enjoyed by the appellants was not unjust. As creditors, the appellants were entitled to their recovery and they were not, in some equitable sense or otherwise, bound to restore it. There was no operative act, intent, or situation on the part of the appellants to make the enrichment unjust, and, as just discussed, their *failure* to act is an unsatisfactory basis for this theory of recovery. *Duckworth, supra.* The contingency-fee arrangement was executed with Bell, not the appellants; thus, the appellee had no reasonable expectation of payment from the appellants. *Id.* The appellants cannot be considered at fault for not intervening in the federal lawsuit prior to the interpleader action; in fact, they were well within their legal rights to stand aside while the appellee and his client initiated the suit, even though the appellants stood to gain from it as well. *Whitely, supra.*

The appellee cites several cases purporting to uphold the application of unjust enrichment and quasi-contract in cases involving subrogation and the common-fund doctrine. Most of these cases are inapposite because they do not rest on the principles of unjust enrichment or quasi-contract at all. The attorney's fee issues in the subrogation cases turn on the application of an attorney's lien, which is specifically provided for by statute. *See e.g., Hatten v. Little Rock Dodge*, 47 Ark. App. 147, 886 S.W.2d 891 (1994); *Continental Cas. Co. v. Sharp*, 312 Ark. 286, 849 S.W.2d 481 (1993); *Daves v. Hartford Accident & Indem. Co.*, 302 Ark. 242, 788 S.W.2d 733 (1990); *Northwestern Nat'l Ins. v. American States Ins.*, 266 Ark. 432, 585 S.W.2d 925 (1979). As for the common-fund cases, one case never mentions quasi-contract, unjust enrichment, quantum meruit or any other similar theory upon which the attorney's fees were awarded. *Pledger v. Bosnick*, 306 Ark. 45, 811 S.W.2d 286 (1991). In a second cited common-fund case, although a quantum meruit theory was upheld by the Arkansas Supreme Court to support an award of attorney's fees, it is clear that the court relied on the unusual nature of common-fund cases to justify the result. *Powell v. Henry*, 267 Ark. 484, 592 S.W.2d 107 (1980). Perhaps most importantly, *Powell* centered on the question of the proper amount of

attorney's fees, not whether a fee should be paid in the first instance. The court in *Powell* noted that that case was a class action involving thousands of electric ratepayers and a substantial amount of money, and further that a reduction in the fee could discourage attorneys from accepting these unusual but important cases. 267 Ark. at 488, 592 S.W.2d at 109. The dynamics of the instant case are quite different. We believe the application of rules from common-fund cases stretches the analogy too far.

The Arkansas case most on point to the situation before us is *Ford Motor Credit Co. v. Exchange Bank*, 251 Ark. 881, 476 S.W.2d 208 (1972). There, the supreme court reversed the application of unjust enrichment to a creditor because the creditor had a legal right to the proceeds of the sale of collateral. Although the appellants here were not secured creditors, the general principle of *Ford Motor Credit* is no less applicable. Sparks and Holt-Krock had an undeniable legal right to the insurance proceeds in the amount specifically negotiated to pay the debt in full. Apparently, this is why the proceeds were assigned to them.

Finally, our conclusion in this case is in accord with the well-settled American rule that attorney's fees are not allowed except when expressly provided for by statute. *Continental Cas. Co. v. Sharp, supra*. The appellee has directed us to no statutory authority to support his fee award and, based on our discussion above, the facts of this case cannot support an award based on a quasi-contractual theory, especially under our standard of review for summary judgment. We need not address the appellants' other points. We reverse and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

PITTMAN and ROBBINS, JJ., agree.