**ARKANSAS CARPENTERS' HEALTH & WELFARE FUND, on behalf of itself and on behalf of all others similarly situated, Plaintiff,**

v.

**PHILIP MORRIS INC; R J Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; Bat Industries PLC; Lorillard Tobacco Company; Liggett Group Inc; American Tobacco Company; Council for Tobacco Research–U.S.A.; Tobacco Institute, Inc; Smokeless Tobacco Council, Inc. Defendants.**

No. LR–C–97–754.

United States District Court,
E.D. Arkansas,
Western Division.

Sept. 28, 1999.

John McN. Broaddus, Robert J. Connerton, Connerton & Ray, Washington, DC, Richard L. Gray, Shook, Hardy & Bacon, Kansas City, MO, Thomas H. McGowan, Nga C. Ostoja–Starzewski, Youngdahl, Sadin & McGowan, Little Rock, AR, George M. Fleming, D'Lisa R. Simmons, Sylvia Davidow, Fleming & Associates, Houston, TX, for Arkansas Carpenters' Health & Welfare Fund.

Sherry P. Bartley, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, AR, Jack E. McClard, Maya M. Eckstein, Hunton & Williams, Richmond, VA, John Lucas, Hunton & Williams, Knoxville, TN, for Philip Morris, Inc.

Sherry P. Bartley, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, Robert Klonoff, Jones, Day, Reavis & Pogue, Washington, DC, for R.J. Reynolds Tobacco Co.

Sherry P. Bartley, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, AR, Kenneth N. Bass, Kirkland & Ellis, Washington, DC, for Brown & Williamson Tobacco Corp., American Tobacco Co.

John S. Cherry, Jr., Robert L. Henry, III, Barber, McCaskill, Jones & Hale, P.A., Little Rock, Jeffrey S. Nelson, Christine L. McDaniel, Shook, Hardy & Bacon, Kansas City, MO, for Lorillard Tobacco Co.

Overton S. Anderson, Anderson, Murphy & Hopkins, L.L.P., Little Rock, AR, for Ligget Group, Inc.

James M. McHaney, Jr., Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., North Little Rock, AR, Peter G. Kumpe, Williams & Anderson, Little Rock, AR, for Council for Tobacco Research–U.S.A.

James M. McHaney, Jr., Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., North Little Rock, AR, for Tobacco Institute Inc.

Sherry P. Bartley, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, AR, for Smokeless Tobacco Council Inc.

## ORDER

MOODY, District Judge.

In the matter before the Court, the plaintiff, a union health and welfare trust fund, has brought suit against several cigarette manufacturers and related entities in which it seeks to recover reimbursement for medical payments it has paid out to its beneficiaries. It seeks recovery under several legal theories, including violation of federal "RICO" and antitrust laws and a variety of state statutory and common laws.

The defendants have moved for dismissal of all claims. For the reasons set out herein, the motions to dismiss are granted.

This Court exercises jurisdiction over the claims both on account of the complete diversity of the parties, 28 U.S.C. § 1332, and the presence of federal questions, 28 U.S.C. § 1331.

\* \* \* \* \* \*

### I. The Parties

The plaintiff is the Arkansas Carpenters Health and Welfare Trust Fund ("the Fund"). It is not disputed that the Fund is an "employee welfare benefit plan" and an "employee benefit plan" within the meaning of language of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. As such, it

provides comprehensive health care benefits to participants who are employed under various collective bargaining agreements, or retired from same, and their dependents. In its class action complaint, the Fund seeks to recover, for itself and on behalf of those similarly situated, reimbursements for what it describes as tobacco related benefit costs incurred when paying health and welfare claims to its plan participants. It also seeks various declaratory and equitable relief.

Defendants Philip Morris Incorporated ("Philip Morris"), R.J. Reynolds Tobacco Company ("RJR"), Brown & Williamson Tobacco Corporation ("Brown & Williamson"), Lorillard Tobacco Company ("Lorillard"), and the Liggett Group, Inc. ("Liggett") are domestic corporations which manufacture, market, sell, and distribute tobacco products, including cigarettes. Separate defendant American Tobacco Company is a corporation with activities similar to those of the defendants just named but which has been purchased by separate defendant Brown & Williamson. Separate defendant B.A.T. Industries P.L.C. is a British company which essentially owns Brown & Williamson.

Separate defendant Council for Tobacco Research ("CTR") is a successor to another research group, the Tobacco Industry Research Committee, and has engaged in tobacco related research, as has separate defendant Smokeless Tobacco Council ("STC"). Both are non-profit New York corporations.

Separate defendant The Tobacco Institute, Inc. ("TI") is a non-profit corporation which has done public relations work for many of the cigarette manufacturers. The firm of Hill & Knowlton is an ad agency which has been utilized by the major cigarette manufacturers and has been mentioned by the plaintiff in its complaint as a defendant. However, the firm was not set out as a defendant anywhere in the style of plaintiff's complaint.

## II. The Claims

At the center of the plaintiff's claims are three groups of factual assertions: (1) smoking has severe health risks which have long been known to the defendants, (2) the defendants have conspired to withhold this information from the cigarette buying public, and in some cases, to knowingly and affirmatively present false evidence to the public which minimized the risks of smoking, and (3) the cigarette companies have manipulated the addictive qualities of some of the chemicals in cigarettes, such as nicotine, despite being aware of the dangerousness of those chemicals.[1]

These factual assertions are made in support of the following legal claims:

### Count I—Violation of "RICO"

Plaintiff has alleged a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), specifically 18 U.S.C. §§ 1962(c) and (d), by the tobacco company defendants. Allegedly, the "persons" within the meaning of the Act were the tobacco companies and the "enterprise" was the public relations work and bogus scientific research conducted by the CTR and the Tobacco Institute. The alleged predicate acts of racketeering include mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

The plaintiffs have arguably been injured in their business and property "because Plaintiffs have been required to

---

**1.** The factual allegations are much more detailed than this Court's abrupt summary suggests. The plaintiff describes a conspiracy dating at least as far back as the early 1950's during which the tobacco companies and their agents discovered, then withheld from the public, critical information about the dangers of tobacco use. The plaintiff also describes in detail the great lengths to which the defendants allegedly lied to and otherwise deceived the public, scientists, and government regulators. However, the Court sees no need in repeating most of that in this Order. The point of this Court's granting of the dismissal motions, as is the case with the granting of *any* dismissal motion, is that even if *all* the allegations are true, the plaintiff has nevertheless failed to state a claim.

incur significant costs and expenses attributable to tobacco-related diseases." *Plaintiff's Complaint* at p. 83, ¶ 230.

### Count II—Violation of RICO

The plaintiff alleges RICO was violated by all the defendants by investing income from racketeering activity in the "acquisition ..., establishment or operation of, any enterprise which is engaged in ... interstate commerce." § 1962(a). The predicate acts of racketeering are alleged to have been the deliberate concealment of the medical risks related to smoking. The enterprise is alleged to have been a combination of CTR and the Tobacco Institute.

### Count III—Violation of RICO

The plaintiff alleges violations of §§ 1962(b) and (d). These two sub-sections provide:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate commerce or foreign commerce.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

For the purposes of this count, the plaintiff alleges that each defendant was a "person" within the meaning of the Act and the enterprises were potential witnesses, government investigators, prosecutors, legislators, and regulators concerned with the health risks of cigarette smoking. The racketeering acts were those relating to a pattern of deceiving the public and public officials about the true dangers of cigarettes.

### Count IV—Sherman Act

The plaintiff has alleged that the defendants violated the Sherman Act, 15 U.S.C. § 1, by conspiring to eliminate competition for their products in the marketplace, which had the effect of limiting "the dissemination of product information regarding the quality, safety and composition of cigarettes and tobacco products, thereby eliminating alternative products from the market, restricting consumer choice, and causing consumers to suffer smoking-related illnesses and health care costs." *Complaint* at p. 90, ¶ 259.

### Count V—Fraud and Misrepresentation (labeled on plaintiff's complaint as Count IV)

The plaintiff alleges that the defendants had a duty to disclose to the public, including the plaintiff and its plan participants, all the material facts about the hazards of smoking, including the addictive qualities of cigarettes. Plaintiff claims the defendants breached that duty by fraudulently misrepresenting the true dangers of the products the tobacco companies were selling to the public. The plaintiff argues that by raising the issue of smoking, and by making "incomplete" statements on the subject, they were obligated to reveal all material facts about the dangers of cigarettes.

The plaintiff argues that "[a]s a direct and proximate result of Defendants' fraudulent misrepresentations, nondisclosures and active concealment, Plaintiffs have suffered and will continue to suffer substantial injuries and damages for which Plaintiffs are entitled to recovery, and for which Defendants are jointly and severally liable." *Complaint* at p.99, ¶ 296.

### Count VI—Intentional Breach of Special Duty (labeled by plaintiff as Count V)

In a separate count, the plaintiff claims that all defendants, because of certain public positions taken by them, have "assumed a special duty to protect the public health and a duty to those who advance the public health, including the Health and Welfare Trust Fund." *Complaint* at p. 100, ¶ 298. Plaintiff claims that it and those similarly situated acted in reliance on those intentional misrepresentations and failed to act as soon as it might have to take measures which would have reduced substantially its pay outs on smoking related claims.

***Count VII—Negligent Breach of Special Duty*** (labeled by plaintiff as Count VI)

In a related theory, in this count the plaintiff alleges that all defendants "knew or should have known" that each had undertaken this special duty and each failed to exercise reasonable care to discharge this duty.

***Count VIII—Breach of Express and Implied Warranties*** (labeled by plaintiff as Count VI)

The plaintiff alleges that the tobacco company defendants made express warranties to the public regarding the safety of their products and made further promises to provide the public with accurate information as to the safety of their tobacco products, that the plaintiffs and their plan participants relied on these promises, and that these warranties were breached by the tobacco companies when they in fact provided unsafe products and misleading health information.

The plaintiff further alleges that the "[d]efendants' products are unmerchantable and are unfit for safe use when sold and consumed as intended. Defendants breached their implied warranty of merchantability because their products are not fit for their intended purposes." *Complaint* at pp. 103–04, ¶ 314.

***Count IX—Unjust Enrichment*** (labeled by plaintiff as Count VII)

Plaintiffs also allege that because the defendants have breached the "special duty" discussed above, and the plaintiff has had to pay resulting medical expenses, the plaintiff has conferred a benefit upon the defendants, i.e., it has paid out sums to its plan participants which should have been borne by the defendants. The defendants should therefore have to make restitution to the plaintiff by reimbursing the plaintiff for the funds thus paid out.

### III. The Dismissal Motions

Before the Court are the parties' motions to dismiss for "failure to state a claim," F.R.Civ.Pro. 12(b)(6) [DOC ##20, 29], and "failure to join a party under Rule 19," Rule 12(b)(7) [DOC ##22, 30]. The Court needs only to consider the 12(b)(6) motions.

When considering a motion to dismiss, the Court assumes that all the factual obligations contained in the complaint are true. *Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). A motion to dismiss will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. In the instant case, even if the Court assumes that all of the factual allegations about the defendants' activities are true, i.e., that the defendants knew of the medical risks associated with their tobacco products, intentionally misled the public about same, and conspired with each other to do so, the Court nevertheless holds that the plaintiff has failed to state a claim upon which relief could be granted *for plaintiff.*

Each of the plaintiff's claims suffers from some version of the same fatal flaw: the aggrieved party or parties, legally speaking, in each of the claims is someone or some group other than the plaintiff. The plaintiff, in other words, is too far removed from the challenged harmful conduct to succeed on any of the several claims. Instead, the plaintiff derives its claims from the injuries allegedly occurring to others, i.e., smokers. Without any injury to smokers, the plaintiff would not have incurred any of the additional, smoking related expenses for which it is now seeking reimbursement. Therefore, there is no *direct* link between the alleged misconduct and the damages of which the plaintiff complains and the defendants did not proximately cause the injuries to the plaintiff. This lack of direct causation between the alleged improper acts of the defendants and the asserted injuries suffered by the plaintiff will be discussed in particular detail as the Court takes up each of the counts in turn.

### A. RICO and Antitrust Claims

Counts I, II, and III of the complaint involve alleged violations of the RICO Act and Count IV alleges a violation of the

Sherman Act. The former provides a private right of action for damages only to those individuals "injured in his business or property by reason of" a violation of RICO's substantive provisions. 18 U.S.C. § 1964(c). The latter provides one for "any person ... injured in his business or property by reason of anything forbidden in the antitrust laws ...." 15 U.S.C. § 15(a). The similarity in language is not coincidental. The Supreme Court has noted that "Congress modeled § 1964(c) on the civil-action provision of the federal antitrust law ...." *Holmes v. Securities Investor Protection Corporation,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

The language of both statutes has been interpreted to limit claimants to those who have suffered injuries "proximately caused" by the alleged wrongdoer. *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)(antitrust); *Holmes,* 503 U.S. at 268, 112 S.Ct. 1311 (RICO)(holding "[t]he reasoning [of *Associated General*] applies just as readily to § 1964(c). We may fairly credit the 91st Congress, which enacted RICO, with knowing the interpretation federal courts had given the words earlier Congresses had used ....").

The Supreme Court has conceded the difficulty of formulating a "one size fits all" definition of proximate cause within the context of determining whether a party has standing to bring a claim of this type but has nevertheless emphasized the "directness" of the relationship between the conduct and the resulting injury.

Here we use "proximate cause" to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts. At bottom, the notion of proximate cause reflects "ideas of what justice demands, or of what is administratively possible and convenient." [citation omitted] Accordingly, among the many shapes this concept took at common law, see *Associated General Contractors,* [459 U.S. at 532–533, 103 S.Ct. 897], was a demand

for some direct relation between the injury asserted and the injurious conduct alleged. Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover. [citation omitted]

Although directness of relationship is not the sole requirement of Clayton Act causation, [footnote omitted] it has been one of its central elements, *Associated General Contractors,* 459 U.S. at 540 [103 S.Ct. 897], ... for a variety of reasons.

*Holmes,* 503 U.S. at 268–69, 112 S.Ct. 1311.

■ In RICO and antitrust actions brought by health and welfare trust funds which, like the plaintiff in the instant case, provide health care benefits to their participants, a three point test has emerged to gauge "remoteness:"

To determine whether an injury is "too remote" to allow recovery under RICO and the antitrust laws, the Court applies the following three-factor "remoteness" test: (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; (2) whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries. See [*Holmes*] 503 U.S. at 269–70, 112 S.Ct. 1311 (RICO); *AGC,* 459 U.S. at 545, 103 S.Ct. 897 (antitrust).

*Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris,* 185 F.3d 957 (9th Cir.1999).

■ In applying this test, the Court of Appeals in *Oregon Laborers–Employers,* which involved every one of the tobacco companies involved in the case before this Court, determined that:

(1) smokers who were participants in the funds in question were "more direct victims of the alleged wrongful conduct" and could be counted on "to vindicate the injury caused by defendants' alleged wrongful conduct;"

(2) "The difficulty of ascertaining the damages attributable to defendants' alleged wrongful conduct and the complexity involved in calculating these damages weigh heavily, if not dispositively, in favor of barring plaintiffs' actions," *Id.;* and

(3) the ability of smokers to seek recovery directly under various state law theories for personal injuries and the related medical costs—the same damages the plaintiff health care funds were seeking—would require courts "to adopt complicated rules apportioning damages among plaintiffs at different levels of injury from the violative acts, to obviate the risk of multiple recoveries." *Id.,* citing *Holmes,* 503 U.S. at 269, 112 S.Ct. 1311.

The Court of Appeals in *Oregon Laborers–Employers* concluded that all three of the factors of the remoteness test "weigh in favor of barring plaintiffs' claims. We therefore hold that plaintiffs lack standing to bring either a RICO or an antitrust claim for damages." *Oregon Laborers–Employers,* 185 F.3d 957, 965. This decision by the Ninth Circuit was in keeping with those of two other Courts of Appeals presented with RICO and/or antitrust claims brought by health and welfare trust funds against some or all of these same tobacco companies: *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.,* 171 F.3d 912 (3rd. Cir.1999)(addressing RICO and antitrust) and *Laborers Local 17 Health & Benefit Fund v. Philip Morris,* 191 F.3d 229 (2nd Cir.1999)(RICO only).[2] In both cases, the respective Courts of Appeals found that the claimed injuries of the plaintiff health care funds were "entirely derivative of the harm suffered by plan participants as a result of using tobacco products," *Laborers Local 17,* Id. at 239, and did not "proximately cause" the injuries alleged by the health funds. Thus, the funds' claims brought under RICO or federal antitrust law were dismissed in both of those cases.

Though the Eighth Circuit Court of Appeals has not yet passed on such a case, three Courts of Appeals, the Second, Third, and Ninth, have considered cases squarely on point with the one before this Court and involving the same defendant tobacco companies being sued by various health trust funds similar in all relevant respects to the plaintiff in this case. Each Court of Appeals has unanimously held that such a plaintiff's claims are too remote, too derivative to maintain a RICO or antitrust claim against these defendants. Though not binding authority on this Court, those decisions persuade the Court that the RICO and antitrust claims in the case at bar should be dismissed as well.

## B. Fraud and Misrepresentation

■ In what the Court shall refer to as Count V, the Fund alleges that the defendants fraudulently misrepresented the true dangers of the products the tobacco companies were selling to the public. The plaintiff argues that "as a direct and proximate result of Defendants' fraudulent misrepresentations ...," the Fund has suffered damages.

In so doing, the plaintiff attempts to avoid the appearance of suing the defendants because of some injury inflicted on others, i.e., smokers. As was the case with Oregon law in *Oregon Laborers–Employers,* Arkansas follows the traditional, and prevailing, rule that a plaintiff may not recover for fraud and misrepresentation directed to a third party. Therefore, plaintiff has argued that misrepresentations were made by the defendants to the Fund.

**2.** The Second Circuit had previously issued this opinion at 172 F.3d 223 but requested it be withdrawn from the published volumes. Presumably, it will be published in the version distributed via Westlaw which the Circuit accessed after the parties had completed their briefing in the instant case.

However, it is inescapable that the Fund's claims are directly linked to the alleged misrepresentations made to the Fund's participants who smoked, not to the Fund itself. This is borne out by the fact that the damages it claims is the amount of smoking related medical claims it has paid. In barring a virtually identical claim for fraud in *Oregon Laborers–Employers*, the Ninth Circuit concluded:

> plaintiffs seek only to recover medical costs paid on behalf of their beneficiaries. This is a classic claim for indemnity, with plaintiffs attempting to recover for the economic loss they have suffered as a result of the physical harm suffered by third parties—the smokers.... [T]his claim for damages is barred.
>
> Moreover, for the same reasons that proximate cause did not exist for plaintiff's RICO and antitrust claims, proximate cause is lacking for their fraud claim.

*Oregon Laborers–Employers*, 185 F.3d 957.

The fraud and misrepresentation claims before this Court are no different. In its complaint, the Fund alleges that the defendants' "fraudulent statements, concealment and conduct, ... was [sic] a substantial cause persuading Plaintiffs' participants and beneficiaries to purchase and use [cigarettes]." *Complaint* at ¶ 292. Despite allegations that the fraud was perpetrated on the Fund, this is simply a case of a third party (the Fund) attempting to recover on account of a fraud allegedly being perpetrated on someone else (the smokers). The claim must fail as a matter of law.

Accordingly, the Court need not address the defendants' alternate defense: that even if misrepresentations were made to the Fund and the Fund relied on such misrepresentations, any such reliance on what the tobacco companies said would have been unreasonable as a matter of law.

## C. "Special Duty"

█ Counts VI & VII allege both intentional and negligent failure to discharge a "special duty" it had to the plaintiff. As to the former claim, this Court is aware of no theory recognized under Arkansas law for a claim of "intentional breach" of a "special duty." An examination of the allegations in plaintiff's complaint causes the Court to conclude that this is nothing more than a restatement of the fraud and misrepresentation claims discussed above. It fails for those reasons.

As to "negligent breach" of a special duty, the Fund argues that by running advertisements like the so called "Frank Statement," the defendants took on a special duty or "responsibility" to act as a sort of guardian of the public health with regard to tobacco products. The defendants were therefore obligated to provide accurate and helpful scientific information about tobacco products to, among others, health trust funds like the plaintiff. It is argued that the defendants' conspiracy to distribute disinformation about the relationship between smoking and certain health problems was a failure to discharge that duty and prevented the plaintiff from "undertak[ing] measures sooner to discourage tobacco use by their participants and beneficiaries." *Complaint* at ¶ 309. This, in turn, caused the Fund to incur greater expenses relating to paying smoking related health claims.

This Court finds no Arkansas case even remotely suggesting that one can assume the sort of "special responsibility" plaintiff describes simply by placing advertisements or issuing corporate statements. Furthermore, any cause of action involving negligence requires the element of proximate cause. The scenario described by plaintiff has much too tenuous a causal connection between the defendants' actions and plaintiff's injuries for the former to be the proximate cause of the latter. Even if one were to assume that defendants' public statements and advertisements were directed to the Fund (though the ads were plainly targeted toward consumers), it is difficult to say with any measure of certainty, much less precision, how many of its participants the Fund might have been

dissuaded from smoking but for the defendants' suppression of critical information.

This lack of certainty as to causation, the difficulty in fixing the portion of plaintiff's damages which are fairly attributable to defendants' conduct,[3] etc., speak to the practical considerations of why such a claim should not be allowed. Simply put, plaintiff cannot show that defendants' alleged conduct was the proximate cause of its injuries.

As the Second Circuit put it last month, "[h]ence, analogous principles to those that doomed plaintiffs' RICO causes of action also bar plaintiffs' common law fraud and special duty actions." *Laborers Local 17,* 191 F.3d 229, 1999 WL 639865 at *13 (2nd Cir.1999).

### D. Warranties

Count VIII[4] contains the Fund's allegations that the defendants have violated express and implied warranties made to the public, including the Fund and its participants. However, there is no allegation that defendants ever provided the plaintiff with any sort of *product* to which these warranties would apply. Furthermore, there is no allegation that defendants made any express warranties to the Fund as to any product it sold.

■ With respect to any claim of breach of an implied warranty of merchantability, the Court first looks to Arkansas' statutes. An implied warranty claim cannot be maintained if the goods at issue: (1) "pass without objection in the trade under the contract description;" (2) "are of fair average quality within the description;" (3) "are fit for the ordinary purposes for which such goods are used, and;" (4) "run ... of even kind, quality and quantity within each unit and among all units involved;" (5) "are adequately contained, packaged, and labeled;" and (6) "conform to the promises or affirmations of fact made on the container or label, if any." Ark.Code Ann. § 4–2–314(2).

Plaintiff has not alleged that the cigarettes manufactured and sold by the defendants failed to meet any of the criteria set out above. For example, there is no charge that the cigarettes were not properly labeled or that the cigarettes smoked by the Fund's participants were of an inferior or atypical grade from those usually sold or that they failed to live up to promises made on the container. On the contrary, read as a whole, it is plaintiff's claim that a typical cigarette, like all cigarettes, is "generally defective." This type of allegation cannot state a claim for breach of implied warranty of merchantability.

■ To the extent plaintiff attempts to state a claim for a breach of implied warranty of fitness for a particular purpose,

---

3. This uncertainty as to both causation and damages was precisely the sort of policy consideration discussed by the Second Circuit in *Laborers Local 17,* albeit in the context of evaluating standing to bring a RICO claim:

> These concerns become particularly pointed in a case, like the present one, where the injuries are alleged to derive not simply from defendants' affirmative misconduct but also from plaintiffs' fraudulently induced inaction. That is, it is often easier to ascertain the damages that flow from actual, affirmative conduct, than to speculate what damages arose from a party's failure to act. In the latter situation, as in the case at hand, it becomes difficult to distinguish among the multitude of factors that might have affected the damages. Here, for example, plaintiffs' alleged damages might have derived from inefficiencies

> in the Funds' own management, as well as from non-smoking related health problems suffered by the smokers, and it would be the sheerest sort of speculation to determine how these damages might have been lessened had the Funds adopted the measures defendants allegedly induced them not to adopt.
>
> The complexity of these calculations makes the ultimate question of damages suffered by the Funds virtually impossible to determine. Indeed, this case seems to present precisely the type of large, complicated damages claims that *Holmes* and *Associated General Contractors* sought to avoid.

*Laborers Local 17,* 191 F.3d 229, 240 (2nd Cir.1999).

4. This was numbered as "Count VI" in plaintiff's complaint on page 103.

the Court finds it fails as well. To create a such a warranty, the seller must have reason to know (1) the buyer's particular purpose, and (2) that the buyer is relying upon "the seller's skill or judgment to select or furnish suitable goods." Ark. Code Ann. § 4–2–315.

In its complaint the Fund made no allegation of any particular purpose for which it (or its participants) bought cigarettes. There is likewise no allegation that the Fund or its participants ever told the defendants of any such need. Accordingly, the plaintiff has not properly stated such a claim.

### E. Unjust Enrichment

Finally, Count IX of the complaint is a claim for unjust enrichment against the defendants. In a nutshell, plaintiff argues that the medical payments it has made to its participants over the years for smoking related problems *should* have been made by the defendants. That plaintiff made them instead means the defendants have received a benefit, *i.e.*, the defendants have been "unjustly enriched."

To maintain such a claim, a plaintiff must show that the defendant obtained a benefit from the plaintiff to which he was not entitled through "some operative act, intent, or situation to make the enrichment unjust and compensable. The courts will imply a promise to pay for services only where they were rendered in such circumstances as authorized the party performing them to entertain a reasonable expectation of their payment by the party beneficiary." *Sparks Regional Medical Center v. Blatt*, 55 Ark.App. 311, 935 S.W.2d 304, 307 (1996). Plaintiff must establish that defendant received money "to which he was not entitled and which he should restore." *Id.*

The Court finds that the defendants received nothing of value, within the meaning of unjust enrichment analysis, when the plaintiff paid the smoking related health claims which it was legally obligated to pay.

[B]ecause plaintiffs had an independent obligation to pay the smokers' medical expenses, they cannot maintain an action for unjust enrichment against defendants just because defendants were incidentally benefitted. *See* Restatement of Restitution § 106 (1936)("A person who, incidentally to the performance of his own duty ... has conferred a benefit upon another, is not thereby entitled to contribution").

*Oregon Laborers–Employers*, 185 F.3d at 968.

It was the plaintiff's legal obligation to pay the smokers, not the defendants' obligation. With no benefit having been conveyed, the issue of whether it would be "unjust" for defendant to keep such a benefit is moot.

\*   \*   \*   \*   \*   \*

For the foregoing reasons, the motions of the defendants to dismiss this matter with prejudice [DOC # 20, 29] are granted. The motions to dismiss for failure to join a party under Rule 19 [DOC 22, 30], and any other pending motions, are deemed moot.

IT IS SO ORDERED.