2010 Ark. App. 712

**Paul Phuoc LE, Paul Le Properties, L.L.C., & Gene Didion, Appellants**

v.

**Ashley Xuan NGUYEN, Appellee.**

**No. CA 10–264.**

Court of Appeals of Arkansas.

Oct. 27, 2010.

Andrew Alex Flake, Fort Smith, for appellants.

Mary Shannon Foster, Greenwood, for appellee.

DAVID M. GLOVER, Judge.

This case involves the imposition of a constructive trust on a piece of real property.[1] The parties are Paul Phuoc Le, appellant, and Ashley Xuan Nguyen, appellee. It is undisputed that Nguyen and Le lived together from 1994 until their relationship ended in January 2006; they were each fifty-percent owners of Le's Import, Inc., incorporated in October 1999 as an "S" corporation in Van Buren, as a business that purchased wrecked vehicles, and then rebuilt and sold them; Nguyen invested money in Le's Import, Inc.; in April 2000, Nguyen, a realtor, found commercial property at 2932–3000 Midland Avenue (investment property) in Fort Smith available as an investment; and they moved their business ₂from Van Buren to 3600 Midland Avenue (3600 Midland) in Fort Smith, where it operated four or five years until January 2006. Ultimately at dispute is the purchase, payment, and ownership of the 3600 Midland commercial property. The parties' testimony on all property matters is diametrically opposed. After hearing extensive testimony from the parties, the trial court held that a constructive trust was to be imposed on the property. Le now appeals the trial court's imposition of a constructive trust. We agree with the trial court and affirm.

In February 2006, Nguyen filed a petition against Le for partition of real property and division of business assets, alleging that as of December 31, 2005, Le's Import held assets that included a building at 3600 Midland, currently valued at $525,000 with a mortgage of $30,000, which was purchased in Le's name in May 2001, and all payments were made from the parties' jointly owned Le's Import bank account;

---

1. The first appeal in this case was dismissed by this court on September 30, 2009, for lack of a final order. These deficiencies were corrected in an order filed on December 1, 2009, and Le timely filed his notice of appeal.

equipment and fixtures valued at $75,000; a bank account valued at $30,000 in both parties' names, listed as Le's Import Auto; a Porsche valued at $100,000; and two Toyota Tundra trucks valued at $50,000. Nguyen pled that after the parties ended their relationship in January 2006, they sold the equipment from Le's Import for $75,000 and divided the sales proceeds equally. She alleged that Le had removed all the company funds from the bank account and did not give her one-half of the funds; that Le entered into a lease, which contained an option to purchase, with TKO Auto Body Repair without disclosing Nguyen's interest in the building; that Le was receiving rent from the building at 3600 Midland in the amount of $3550 per month, paying a $1932 mortgage out of those rents, and that she was entitled to one-half of the remaining amount, or $809 per month; and that Le had moved the three vehicles out of Arkansas and had failed to pay her for her one-half interest in the vehicles. Nguyen prayed that she be paid one-half of all rents over and above the mortgage payment since January 1, 2006, on the property located at 3600 Midland; that the trial court set aside the lease agreement between Le and TKO Auto Body Repair and order a new agreement showing her as co-owner of the property and that she was entitled to one-half of the lease payments and one-half of any buy-out provision; that she be awarded one-half of the proceeds from the Le's Import bank account; and that she be awarded one-half the value of the three vehicles owned by Le's Import or order that the Porsche be turned over to her.

In the final order entered on December 1, 2009, the trial court determined that with respect to the property located at 3600 Midland, which was the sole asset owned by Paul Le Properties, LLC (PLP), Gene Didion owned forty-five percent; and that with regard to the remaining fifty-five percent of the asset titled in PLP, a constructive trust existed and that Nguyen was entitled to a twenty-seven and one-half percent interest in the property, with Le owning the remaining twenty-seven and one-half percent interest. The trial court also ordered that Nguyen was entitled to one-half of $834.90 (fifty-five percent of the $1518 monthly profit), and that she was owed back rent of $12,100.25. The trial court further awarded Nguyen $6,872.38, which was one-half of the remaining total of the bank account. At the time of the order, the vehicles in question had already been sold by private sale, and the proceeds had been equally divided between the parties.

## The Disputed Testimony

### Nguyen's Version of Events

At trial, Nguyen testified extensively. Le performed the actual work on the cars while she, a realtor, handled the financing portion of the business. From June 1994 through October 2003, she contributed $212,003.47 to Le's Import from her checking account. In April 1999, she found the investment property in Fort Smith for a buyer who was looking for commercial property; however, the buyer was unable to secure financing. She then brought up the idea of purchasing the property to Le; they both agreed to buy the property for the price of $60,000. Le had bad credit and she considered putting the property in her name only, but if she did that, she would have to purchase the property through her broker pursuant to her employment agreement, which the parties did not want to do. She and Le then approached a friend, Gene Didion, who had financed purchases for Le's Import, to purchase the property in his name and carry a note on the property while she and Le paid the note off, at which time Didion

would issue a deed transferring title to her and Le. Didion agreed to do this, and in April 1999, Didion purchased the investment property for $60,000. She made payments to Didion on that property from the Le's Import bank account. Nguyen identified a document dated December 2003 as a note to Didion, which, to her knowledge, was the $60,000 note that now had a $33,000 balance. They did not make regular monthly payments to Didion. Didion was renting out the property and keeping the rents because she and Le had not yet paid the building off.

Le's Import moved its business location from Van Buren to 3600 Midland in Fort Smith at some point, where they rented from Al Williams for five or six years at the rate of $1000 per month. At some point, Williams agreed to sell the building to her and Le for $200,000. According to Nguyen, they were to trade the investment property as partial payment for the 3600 Midland property. Although Didion actually had title to the investment property, they had been making payments to Didion on it since it was purchased in 1999. Further according to Nguyen, they received a $90,000 credit for the investment property, leaving a $110,000 balance on the 3600 Midland property, which was going to be owner-financed by Williams. Didion had an interest in the 3600 Midland property only on the $60,000 note that was owed to him on the investment property.

At the time of the sale of the 3600 Midland property, Nguyen did not know anything about PLP—Le did not tell her that he was forming the company with Didion. Le's Import was going to make monthly payments to Williams on the $110,000 note in the amount of $1982 per month; this payment came from the Le's Import bank account. In 2001, because Nguyen believed that she and Le had purchased the building from Williams, Le's

Import stayed in the unit (for which Le's Import had previously paid $1000 per month in rent), and paid $1982 monthly, which was the amount of the note payment. The monthly rents from the building were deposited in the Le's Import bank account from 2001 until they broke up in January 2006. They took depreciation on the building as well as an interest deduction on the Le's Import tax returns. There was never any doubt in her mind about the ownership of the building at 3600 Midland—Le's Import, she and Le, owned it. According to her, she did not know that PLP existed, and further, the building at 3600 Midland was now worth about $550,000.

She and Le were like husband and wife; their relationship did not turn sour until 2005. When they purchased the 3600 Midland property in May 2001, they were on good terms, but Le did not tell her about his arrangement with Didion to enter into PLP. She did not go to the closing on 3600 Midland. She did not know that the property was purchased by PLP; she thought that it was purchased by Le and Didion. Didion never had any discussions with her personally about buying the 3600 Midland property. She and Le did not put any money down in the purchase—the only down payment was the trade of the investment property by Didion. The buyer shown on the deed to 3600 Midland was PLP. She did not think about writing a contract of sale or some sort of note that would memorialize the agreement between her, Le, and Didion.

As a shareholder of Le's Import, she benefitted from Le's relationship with Didion. After the building was purchased in May 2001, all of the rents from the building went through the Le's Import bank account; Didion never asked to be paid his share of the rents. Didion's failure to ask for rents showed that he was not the own-

er of the building; rather, she and Le were the owners because the rent was deposited into their account.

She believed that the $33,000 note payable to Didion was the remainder of the $60,000 note related to the investment property that was traded as a down payment on the 3600 Midland property because that is what Le told her. She was not initially aware of a $110,000 note to Williams; she did not sign the note; Le and Didion signed it. According to her, Le's Import made the payments on the note out of its account, not Didion, and Didion was buying the property for her and Le. She and Le were supposed to pay back Didion, whom she trusted, the $60,000 for the property whenever they had the money.

The lease agreement between TKO and PLP was dated January 31, 2006. She filed her complaint on February 27, 2006. Her first knowledge of PLP came after she and Le split up. She filed her complaint within a month after realizing that she had been duped because she did not know that Didion and Le were in business together. The only reason she thought Didion had his name on the deed was for the balance of the $60,000 note that they owed him. The first time she became aware that PLP owned 3600 Midland was January 2006, after she saw PLP on the lease.

*Testimony of Le's Import's Accountant*

Nguyen called as a witness a CPA whose company prepared income-tax returns for Le's Import. The CPA verified that the building at 3600 Midland Avenue appeared on the corporate tax return as an asset owned by it from 2001 to 2005, and that depreciation was taken on the building the first year and carried over the second year. On the 2003 tax return, there was a note payable to Didion for $33,000, and note payments and interest-expense payments to Al Williams were taken. The 2004 tax return again reflected the $33,000 note to Didion as well as note reduction to Al Williams from $30,332.31 to $28,540.34; there was no rental expense shown, but there was a mortgage in the amount of $60,672. In the 2005 tax return, the parties, Nguyen and Le, still owned the corporation fifty-fifty; there was a sale of business property of $75,000, and there was rent expense of $21,998. According to the CPA, in 2007, after the suit was filed, Le stated that he believed the tax returns had been prepared incorrectly—that the building should have been rental property under PLP and should not have been on the books of Le's Import.

The CPA did not know which building was listed as the asset, but she noted that the address and application for an employer ID number for Le's Import, Inc., reflected the 3600 Midland address. The CPA's records did not contain a lease between Le's Import and PLP. However, the tax returns reflected that Le's Import made $1982.80 monthly payments to Al Williams from 2001 through 2005. The CPA did not prepare a final return in 2006 for Le's Import.

*Le's Version of Events*

They lived in Nguyen's house and for the most part, she paid all of the living expenses. The investment property was discovered by Nguyen, but he did not have the money to pay for it, so he approached Didion about purchasing it. Le's reason for not purchasing the property in his and Nguyen's names was because they did not have the money and because his credit was not good enough to do it. He asked Didion to purchase the property, and that maybe in the future, if he had the money, he would buy it back from Didion. He never made any purchasing arrangements with Didion; he just asked Didion to buy

the property for him and hold it. He did not make any payments to Didion for the property. The $33,000 note was for cars, but he could not recall the specific cars. There was no written agreement with regard to the building.

He moved Le's Import to 3600 Midland and was paying $1000 per month in rent, and in 2001 Al Williams approached him, wanting to sell that property. He did not have the money for a down payment, so he approached Didion about helping him get into the building. He and Didion went in as partners on the 3600 Midland property. Williams required a down payment. Williams was interested in the investment property owned by Didion, and Didion agreed to trade the investment property as a down payment on the 3600 Midland property. He and Didion were going to be partners in the 3600 Midland property, with Le having a fifty-five percent interest and Didion having a forty-five percent interest. He and Didion were partners only on that one piece of property. PLP was formed strictly to protect Didion's interest in that property. All of the payments for the 3600 Midland property were not made out of the Le's Import bank account. Le's Import just rented the building from PLP. PLP never filed tax returns. Didion gave him the right to collect all the rents from 3600 Midland. After he purchased the building, he paid $1982 per month in rent, when he had previously been paying only $1000 per month. He collected the other rents and deposited them into the Le's Import account, the business he owned with Nguyen. According to him, it was a mistake from the beginning, but he did not pay any attention to the mistake.

Nguyen had no interest in the property. He and Nguyen did not make payments; they were paying rent because they were collecting over $3000 per month in rent, which was helping Le's Import tremen-dously. They only paid $1982 on the mortgage for PLP. Nguyen was not entitled to half of the rent just because he collected the rent for PLP to put into the Le's Import account to improve the building and make all of the mortgage payments. He was taking the rent money and putting it into the Le's Import bank account. He did that because Le's Import was renting the building. The reason the Williams note on the 3600 Midland property was being paid by a company in which Nguyen was a fifty-percent owner yet she had no ownership of the building was because Nguyen knew "the whole thing" about PLP from the beginning. She did not have any interest in the building because only he and Didion were on the note, she was not. It was Didion's money and not hers. The building was to be rented strictly from PLP.

PLP was not formed just for the purchase of the 3600 Midland property. He did not tell Nguyen that he and she owned the building. She knew the "whole thing" from the beginning. He paid the promissory note to Williams out of a company that was half-owned by Nguyen, but she did not have a half interest in those payments because that was "just the rent money." Nguyen had invested money in Le's Import, but not $212,000 between 1994 and 2003. He did not promise Nguyen an interest in the property at 3600 Midland through Le's Import.

*Gene Didion's Testimony*

He met Le when Le performed some auto repair work for him in the early 1990s. He began to loan Le money after Le repaired several cars for him. The $33,000 debt on the Le's Import's books in 2003 probably came from an accumulation of loans. The $33,000 was not the balance of a $60,000 loan for the investment property. There was never any agreement between him and Le that that property

would be Le's property or that he would sell it to Le when Le had money to buy it. Le and Nguyen told him about the property, and he bought it on his own. There was no agreement to sell the property to Le.

The trading of the investment property to Al Williams for the 3600 Midland property came about when he and Le formed PLP. He traded the investment property from which he was collecting rent income for the 3600 Midland property that he could have had rental income from, but he allowed Le to keep all of the income. PLP was formed strictly for purchase of the 3600 Midland property and for his protection of the $60,000 that he loaned to Le that became $90,000 when the properties were traded.

*Nguyen's Rebuttal Testimony*

She had no knowledge of PLP. She would normally be a signatory on a long-term lease for Le's Import, and she would not have agreed to the lease because it increased the rent from $1000 per month to $1982 per month.

On appeal, Le makes three arguments:

I. Did the Circuit Court err when it imposed a constructive trust on the property at 3600 Midland when Ashley Nguyen failed to prove all of the necessary elements of a constructive trust?

II. Should the Circuit Court have found a constructive trust existed on Paul Le's interest in 3600 Midland when Ashley Nguyen, as a shareholder in Le's Import, benefitted from Paul Le Properties, LLC's purchase of 3600 Midland and there was no unjust enrichment?

III. Was the Circuit Court's ruling on the issue of constructive trust so ambiguous in its findings that a constructive trust should not have been imposed?

*Standard of Review*

In *Slaton v. Jones*, 88 Ark.App. 140, 147, 195 S.W.3d 392, 396 (2004), this court held:

In reviewing a circuit court's exercise of its equity jurisdiction, we consider the evidence *de novo*, but we will not reverse a trial judge's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Ward v. Davis*, 298 Ark. 48, 765 S.W.2d 4 [5] (1989). We give due deference to the superior position of the trial judge to view and judge the credibility of the witnesses. *Arkansas Presbytery v. Hudson*, 344 Ark. 332, 40 S.W.3d 301 (2001). A finding is clearly erroneous when, even though there is evidence to support it, the appellate court is left with the definite and firm conviction that a mistake has been made. *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 994 S.W.2d 468 (1999).

**I. Elements of a constructive trust**

This court set forth the elements of a constructive trust in *Higgins v. Higgins*, 2010 Ark. App. 71, at 10–11, 374 S.W.3d 56, 61–62:

A constructive trust is an implied trust that arises by operation of law when equity demands. *Tripp v. Miller*, 82 Ark.App. 236, 105 S.W.3d 804 (2003). These trusts are imposed against a person who secures legal title by violating a confidential relationship or fiduciary duty, or who intentionally makes a false oral promise to hold legal title for a specific purpose and, after having acquired the title, claims the property for himself. *Wrightsell v. Johnson*, 11 [77] Ark.App. 79, 72 S.W.3d 114 (2002). The basis of a constructive trust is the unjust enrichment that would result if

the person having the property were permitted to retain it. *Tripp, supra.* To impose a constructive trust, there must be full, clear, and convincing evidence leaving no doubt with respect to the necessary facts, and the burden is especially great when title to real estate is sought to be overturned by parol evidence. *Nichols v. Wray,* 325 Ark. 326, 925 S.W.2d 785 (1996).

Persons engaging in nonmarital relationships may be determined to occupy a confidential relationship sufficient to support a constructive trust where the other elements are present. *Slaton, supra.*

Under this point, Le only argues that Nguyen's testimony regarding the two pieces of real estate involved in this case was contradictory and not credible. To support his argument, he points out what he perceives to be contradictions and inconsistencies in Nguyen's testimony. He also points to the fact that the trial court divided the Le's Import bank account that was also at issue more in line with his testimony instead of Nguyen's testimony.[2] Le's argument is not persuasive.

■ Here, the parties' testimonies were diametrically opposed as to their intentions with regard to the properties. It is apparent from the trial court's imposition of the constructive trust that it deemed Nguyen's testimony with regard to the ownership of the building to be more credible than that of Le. The short answer to this argument is that this court defers to |14the trial judge with regard to issues of witness credibility. *Slaton, supra.* Disputed facts and determinations of witness credibility are within the province of the finder of fact. *Cox v.*

*Miller,* 363 Ark. 54, 210 S.W.3d 842 (2005). Nguyen's testimony regarding the real property, if believed, is sufficient to support the trial court's finding of a constructive trust. Furthermore, she produced tax returns that indicated a debt owed to Didion, which she claimed was the remaining amount left to pay on the investment property mortgage, and a building also appeared on the tax returns as an asset on which depreciation was taken. Additionally, rent on the space Le's Import occupied almost doubled when the building was sold, from $1000 per month to $1982, which was the amount of the note payment to Al Williams. All of the rents were deposited in the Le's Import bank account, and the note payment was made from that account. The fact that the trial court did not agree with Nguyen on the amount of money in the Le's Import account is of no moment with regard to her testimony regarding the real property at issue in this case—one simply has nothing to do with the other. There is sufficient evidence to support the trial court's imposition of a constructive trust.

## II. Unjust Enrichment

Under this argument, Le contends that Nguyen's claim for a constructive trust cannot be valid because she received benefits from the 3600 Midland property as a shareholder of Le's Import due to the fact that the rents collected from that property were allowed to be used as |15cash flow for Le's Import, which was beneficial to both of them. Le misses the point on this issue.

■ In *Sparks Regional Medical Ctr. v. Blatt,* 55 Ark.App. 311, 316–17, 935 S.W.2d

2. Nguyen's testimony at trial was that as of January 21, 2006, the balance in the Le's Import bank account was $23,245, and that Le withdrew all of the money out but about $400; however, on cross-examination, Nguyen admitted that the balance in the account on January 31, 2006, was $13,536.76. The trial court ultimately divided $13,744.76, awarding each party fifty percent. This is not an issue on appeal except for the fact that Le attempts to use this to show that Nguyen's testimony should be discounted.

304, 307 (1996), this court, citing 66 Am. Jur.2d, *Restitution and Implied Contracts* § 3 (1973), defined "unjust enrichment" as

a general principle underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.

To find unjust enrichment, a party must have received something of value to which he was not entitled and which he should restore. *Blatt, supra.*

■ Le seems to contend, without citing any relevant authority, that he would not be unjustly enriched by being allowed to retain a fifty-five percent interest in the property at 3600 Midland because Nguyen received benefits from this property during the time Le's Import was in existence. The fact that benefits were received by Nguyen from this property during the existence of Le's Import is irrelevant—both parties received benefits during that time. The issue is whether Le would be unjustly enriched by being allowed to retain his fifty-five percent interest in the building at 3600 Midland that he led Nguyen to believe was being purchased by Le's Import. The answer to this question is clearly yes. Nguyen testified that the 3600 Midland property was purchased for $200,000 by trading the investment property, a building on which Le's Import had been making payments, for a $90,000 credit and then paying the remaining $110,000 note and real-estate taxes out of the Le's Import bank account using the rent collected from the 3600 Midland property. Nguyen further testified that the property was listed

and depreciated on the Le's Import tax returns. There was testimony that the building was now worth over $500,000. Clearly, Le would be unjustly enriched if he were allowed to retain the entire fifty-five percent interest in the 3600 Midland property.

### III. Ambiguity of Ruling on Constructive Trust

Le's last point on appeal is that the trial court's ruling with regard to the imposition of a constructive trust was ambiguous because the trial court did not make specific findings that Le had abused his confidential relationship with Nguyen. The only authority Le cites under this point is *Hall v. Superior Federal Bank*, 303 Ark. 125, 134, 794 S.W.2d 611, 615 (1990), for the proposition that a confidential or fiduciary relationship does not in and of itself give rise to a constructive trust; rather, it is the "abuse of confidence rendering the acquisition or retention of property by one person unconscionable against the other" and requiring the imposition of a constructive trust.

While the excerpt from *Hall* is a correct citation of the law, we disagree that the trial court did not find that Le had abused his confidential relationship with Nguyen to benefit himself with regard to the purchase of the property at 3600 Midland. The trial court, in holding that a constructive trust was to be imposed, stated, "In this case Mr. Le, you could say or could be argued that he has acquired partial legal title to the detriment of Ms. Nguyen through either fraud, actual fraud, constructive fraud, violation of a confidential relationship or violation of a fiduciary relationship or any other unconscionable conduct.... So, the Court is going to find that there is a constructive trust on this property and that I am going to find that [Nguyen] owns one half of 55 percent of

3600 Midland." This finding is clear and unambiguous. The trial court was not clearly erroneous in imposing a constructive trust.

Affirmed.

VAUGHT, C.J., and BAKER, J., agree.